**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

LYNNE MEREDITH, a/k/a BONITA
LYNNE MEREDITH, LYNNE MERIDITH,
LYNN MERIDITH and LYNN
MEREDITH,
*Defendant-Appellant.*

No. 05-50452

D.C. No.
CR-02-00372-
DDP-01

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

TERESA MANHARTH GIORDANO,
*Defendant-Appellant.*

No. 05-50457

D.C. No.
CR-02-00372-
DDP-4

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

GAYLE BYBEE,
*Defendant-Appellant.*

No. 05-50473

D.C. No.
CR-02-00372-
DDP-02

OPINION

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted
April 9, 2012—Pasadena, California

7531

Filed June 26, 2012

Before: Andrew J. Kleinfeld and Milan D. Smith, Jr.,
Circuit Judges, and Algenon L. Marbley, District Judge.*

Opinion by Judge Milan D. Smith, Jr.

---

*The Honorable Algenon L. Marbley, District Judge for the U.S. District Court for the Southern District of Ohio, sitting by designation.

## COUNSEL

Gretchen Fusilier (argued), Carlsbad, California, for defendant-appellant Teresa Manharth Giordano.

Joe Alfred Izen, Jr. (argued), Bellaire, Texas, for defendant-appellant Lynne Meredith.

Marcia J. Brewer, Culver City, California, for defendant-appellant Gayle Bybee.

André Birotte Jr., United States Attorney, Robert E. Dugdale, Assistant United States Attorney, Chief, Criminal Division, and Jean-Claude André (argued), Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

## OPINION

M. SMITH, Circuit Judge:

Defendant-Appellants Lynne Meredith, Teresa Manharth Giordano, and Gayle Bybee appeal their jury convictions for conspiracy to defraud the United States, mail fraud, false rep-

resentation of a Social Security number, passport fraud, and failure to file income tax returns. Their convictions arose from their participation in businesses that helped customers evade federal and state income taxes.

Defendants-Appellants contend that their convictions violate the First Amendment. We agree that mere advocacy of tax evasion — and nothing more — cannot support convictions for conspiracy or fraud. However, the defendants did far more than advocate. They developed a vast enterprise that helped clients hide their income from federal and state tax authorities. Accordingly, we reject their claims that their convictions violated the First Amendment. We also reject Giordano's claim that the indictment erroneously included misdemeanor crimes among the eighty-one objects of the felony conspiracy count, and her challenge to the district court's jury instruction on the crime of failure to file income taxes. However, we vacate Giordano's restitution order and remand for recalculation because the district court failed to consider evidence that Giordano presented at sentencing.

Defendants-Appellants' other claims of error are addressed in a memorandum disposition filed contemporaneously with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Beginning in 1994, Meredith owned and operated various businesses, including We the People (WTP), Free the People, Sovereignty Pure Trusts, and Liberty International. These organizations sold books and held seminars that instructed people how to avoid paying any personal income taxes. Giordano worked for WTP, and other Meredith-created businesses, as a paralegal, drafting correspondence to the IRS and the California Franchise Tax Board on behalf of clients. Bybee served as International Marketing Director for Liberty International and trust salesperson for Liberty International and Sovereignty Pure Trusts.

Meredith wrote two books, "How to Cook a Vulture" and "Vultures in Eagle's Clothing," which explained how people could stop paying income taxes. The books instructed customers to falsely report to the IRS that they did not owe income taxes. Meredith and Bybee also organized seminars in which Meredith instructed customers how to evade paying income taxes.

At the heart of the defendants' operations was a financial instrument known as a "pure trust," which they claimed was exempt from taxes. The defendants sold these trusts to customers who learned about Meredith's theories at seminars and in her books. WTP opened bank accounts for customers using a nine-digit "trust identification number," which was not the customers' social security numbers or an employer identification number issued by the IRS for the purported trust.

Meredith, Giordano, Bybee, and co-defendants Betty Erickson, Gregory Karl, Nora Moore, Toni Smith, and Willie Watts were indicted on April 11, 2002. Count 1 charged them with conspiring to defraud the United States by impeding, impairing, obstructing, and defeating the lawful functions of the IRS in the ascertainment, computation, assessment, and collection of federal taxes, in violation of 18 U.S.C. § 371. Counts 2-12 charged them with mail fraud, in violation of 18 U.S.C. § 1341, and alleged that they sold "bogus trusts, bank accounts, and books misrepresenting that fraudulent income tax returns could legitimately be filed . . . as true and accurate income tax returns." Counts 13 and 14 charged Meredith with false representation of a Social Security number, in violation of 42 U.S.C. § 408(a)(7)(B). Count 15 charged Meredith with passport fraud, in violation of 18 U.S.C. § 1542. Counts 16-35 charged the defendants with misdemeanor failure to file income tax returns, in violation of 26 U.S.C. § 7203.

Smith pleaded guilty before trial. The remaining seven co-defendants went to trial on February 10, 2004. Defendants moved for judgments of acquittal at the close of the govern-

ment's case, and the court deferred the ruling. The court granted the government's motion to dismiss counts 6, 7, 9, 10, and 11 on April 8, 2004, and it dismissed counts 2, 3, 4, and 5 against Bybee. On May 3, 2004, the jury found Meredith guilty on counts 1, 2, 3, 5, 8, and 13-20, Bybee guilty on counts 1, 21, 22, and 23, and Giordano guilty on counts 1, 2, 3, 5, 8, 24, and 25. The jury also found Karl, Watts, Erickson, and Moore guilty on various counts. Erickson and Moore did not appeal. We affirmed Karl and Watts's convictions in an unpublished decision on January 11, 2008. *United States v. Karl*, 264 F. App'x 550 (9th Cir. 2008).

On June 6, 2005, the district court sentenced Meredith to 121 months' imprisonment, Bybee to 60 months' imprisonment, and Giordano to 40 months' imprisonment. Bybee, Giordano, and Meredith filed timely notices of appeal, in June 2005.

## JURISDICTION AND STANDARDS OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291.

"We review *de novo* whether the district court's instructions adequately presented the defendant's theory of the case, but we review the instruction's precise formulation for an abuse of discretion." *United States v. Stinson*, 647 F.3d 1196, 1215 (9th Cir. 2011) (internal quotation marks and citation omitted).

Sentencing decisions are reviewed for abuse of discretion. *See United States v. Carty*, 520 F.3d 991, 993 (9th Cir. 2008) (en banc).

## DISCUSSION

### I.   Sufficiency of the evidence

Defendants-Appellants challenge the sufficiency of the evidence underlying their convictions for mail fraud, conspiracy,

false representation of a Social Security number, and passport fraud.

To evaluate the sufficiency of the evidence on appeal, we conduct a two-part inquiry. First, we "must consider the evidence presented at trial in the light most favorable to the prosecution." *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc) (citation omitted). Second, we "must determine whether this evidence, so viewed, is adequate to allow *any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted).

## A. Mail fraud and conspiracy

Defendants-Appellants contend that insufficient evidence supports their conspiracy and mail fraud convictions because their conduct was protected by the First Amendment.

To evaluate this argument, we first outline the level of First Amendment protection the Constitution provides to anti-tax activities. Next, we examine the evidence supporting each of the mail fraud and conspiracy charges, and determine whether the First Amendment protects those acts.

### 1. First Amendment and anti-tax activities

[1] The First Amendment prohibits any law "abridging the freedom of speech[.]" U.S. Const. amend. I. However, the Supreme Court has carved out some limited categories of "unprotected" speech, including "obscenity, defamation, fraud, incitement, and speech integral to criminal conduct." *United States v. Stevens*, 130 S. Ct. 1577, 1584 (2010) (citations omitted).

At issue here is the First Amendment exception that allows the government to regulate speech that is integral to criminal conduct. This exception first arose in *Giboney v. Empire Stor-*

*age & Ice Co.*, 336 U.S. 490 (1949), in which a state court prevented unions from picketing to force a distributor to enter an agreement that violated state anti-trade restraint law. *Id.* at 491-92. The Supreme Court upheld this ruling, rejecting the contention that "the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute." *Id.* at 498.

**[2]** In *United States v. Freeman*, 761 F.2d 549 (9th Cir. 1985), we applied this exception to a tax evasion case. The defendant was convicted of fourteen counts of aiding and abetting, and counseling violations of the tax laws. *Id.* at 551. The jury was not instructed on a First Amendment defense, and therefore we reversed the convictions on the twelve counseling counts. *Id.* at 551-52. However, we affirmed the convictions on the counts for assisting in the filing of false returns. We held that "[i]n those instances, where speech becomes an integral part of the crime, a First Amendment defense is foreclosed even if the prosecution rests on words alone." *Id.* at 552.[1]

Meredith relies primarily on *United States v. Dahlstrom*, 713 F.2d 1423 (9th Cir. 1983), which involved defendants who held seminars at which they "instructed members on how to create foreign trust organizations (FTO's) in order to

---

[1]At oral argument, Meredith's counsel suggested that *United States v. Alvarez*, 617 F.3d 1198 (9th Cir. 2010), requires us to invalidate *any* restrictions on speech. We disagree. In *Alvarez*, we struck down a federal statute that imposed a criminal penalty on any individual who falsely claimed to have been awarded a military decoration or medal. *Id.* at 1202. We held that this statute is unconstitutional because it "applies to pure speech; it imposes a *criminal* penalty of up to a year of imprisonment, plus a fine, for the *mere utterance or writing* of what is, or may be perceived as, a false statement of fact—without anything more." *Id.* at 1200 (emphasis in original). The key difference between *Alvarez* and this case is the "anything more" element. Here, the indictment accused the defendants of not only advocating tax evasion, but actively helping customers evade the payment of taxes.

reduce their tax liabilities." *Id.* at 1425. The defendants were convicted of conspiracy and tax fraud. We reversed the convictions on six of the tax fraud and conspiracy counts for insufficient evidence, partly because "the [F]irst [A]mendment would require a further inquiry before a criminal penalty could be enforced." *Id.* at 1428. Based on the evidence presented at trial, we concluded that the exception for incitement of imminent unlawful activity did not apply because "[n]othing in the record indicates that the advocacy practiced by these defendants contemplated *imminent* lawless action." *Id.* (emphasis in original). *Dahlstrom*, however, is inapposite here because it involves the First Amendment exception for inciting imminent lawless action. Because the defendants here are charged with mail fraud and conspiracy committed in part by means of speech, we instead analyze this case under *Freeman*'s First Amendment exception for speech that is integral to a crime.

**[3]** For each count, we must determine whether defendants merely encouraged their customers to evade taxes, or if their speech was integral to the crime.

### 2. Counts 2 and 3 (mail fraud)

"Mail fraud has two elements: (1) having devised or intending to devise a scheme to defraud (or to perform specified fraudulent acts), and (2) use of the mail for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts)." *United States v. Van Alstyne*, 584 F.3d 803, 814 (9th Cir. 2009) (internal quotation marks and citations omitted). "A participant in a scheme to defraud is liable for acts of mail or wire fraud committed by co-schemers, provided those acts took place during the life of the scheme and . . . were reasonably foreseeable as a necessary and natural consequence of the fraudulent scheme." *United States v. Green*, 592 F.3d 1057, 1070 (9th Cir. 2010) (internal quotation marks omitted).

Count 2 charged Meredith and Giordano with causing customer John Spatola to mail a 1995 Form 1040X Individual Income Tax Return, and Count 3 charged them with causing Spatola to mail a 1996 Form 1040 Individual Income Tax Return.

At trial, Spatola testified that he learned of WTP and pure trusts from co-defendant Erickson, a relative of Spatola who assisted Meredith with seminars and book sales. Spatola testified that after he read Meredith's book, "Vultures in Eagle's Clothing," Erickson told him he could lawfully avoid paying income taxes. After that conversation, he attended two seminars at which Meredith discussed how to avoid paying taxes. Spatola also testified that Meredith's book and newsletters instructed readers to file amended tax returns to recover taxes that he had already paid. After Erickson and co-defendant Watts told Spatola that they filed amended returns and received money back, Spatola pursued this strategy and filed amended tax returns, following specific instructions from Meredith's books. Spatola testified that he would not have amended his returns without these assurances from Erickson and Watts. In July 1998, Spatola received notices from the IRS, stating that he would be penalized for filing frivolous tax returns. After he learned of the penalties, Spatola contacted Erickson, who said that she was studying to become a paralegal, and offered to assist Spatola for a fee.

**[4]** The First Amendment does not prohibit conviction of Meredith and Giordano on Counts 2 and 3. WTP (by way of its owner and employees) did more than encourage Spatola to file fraudulent amended returns. Spatola not only received specific instructions from Meredith's books and seminars, but he also discussed his plans in detail with Erickson and Watts, who were participants in the overall scheme. These discussions were integral to the crime. Although Spatola did not testify that he had one-on-one interactions with Meredith or Giordano, they both are liable for the reasonably foreseeable actions of their co-schemers. *See Green*, 592 F.3d at 1070.

Viewing the record in the light most favorable to the prosecution, there is sufficient evidence for a rational jury to find Meredith and Giordano guilty of Counts 2 and 3 beyond a reasonable doubt.

### 3. Count 5 (mail fraud)

Meredith and Giordano also were convicted on Count 5, which charged them with causing WTP customer Kevin Stambaugh to mail a "claim for release of erroneous notice of lien/levy" protest letter.

At trial, Stambaugh testified that after hearing Meredith discuss tax evasion on the radio, he purchased her book and video tape. In early 1996, following the instructions in her book, he amended his income tax returns from both 1993 and 1994 to show zero income. He also filed zero-income tax returns for 1995 and 1996, even though he earned income in those years. In 1997, the IRS issued a deficiency notice for the 1995 return and penalized Stambaugh $4,334. The IRS also disallowed his 1993 and 1994 amended returns. After receiving these notices, Stambaugh called WTP and was referred to Giordano. Stambaugh testified that he spoke with Giordano six or seven times, and Giordano assured him that he would ultimately prevail against the IRS. Beginning in February 1997, Giordano prepared a series of letters for Stambaugh to send to the IRS, for $50 each. Among the letters that Giordano prepared for Stambaugh was a July 28, 1997 request for the IRS to release a levy.

**[5]** The First Amendment does not protect these actions. The defendants did far more than merely encourage Stambaugh to defraud the federal government; their speech was integral to Stambaugh's tax evasion. Giordano explicitly instructed Stambaugh how to avoid taxes, and she drafted letters for him to send to the IRS in furtherance of the fraud. Giordano actively participated in the fraud. As a co-schemer in the WTP enterprise, Meredith also is liable. *See Green*, 592

F.3d at 1070. Viewing the evidence in the light most favorable to the prosecution, a rational jury could find Meredith and Giordano guilty beyond a reasonable doubt on Count 5.

### 4.  Count 8 (mail fraud)

Meredith and Giordano were convicted on Count 8, which charged them with mail fraud for causing customer Eric Bors to mail a $595 check for the purchase of a pure trust.

At trial, Bors testified that he contacted Sovereignty Pure Trusts — one of Meredith's organizations — to learn about pure trusts. Bors spoke with Meredith and co-defendant Moore, who explained how the trusts could help him avoid paying any taxes. Bors purchased a pure trust from Moore, as well as books and pamphlets that provided additional instructions about avoiding income and social security taxes. Moore advised him about setting up the pure trust, and filled out the trust application for him. On September 29, 1997, Bors mailed a $595 check to Sovereignty Pure Trusts in exchange for a trust. Bors testified that he would not have purchased the pure trust without the assurances from Meredith and Moore that the trusts protect income from the IRS.

**[6]** The First Amendment does not prevent conviction on this count because Meredith and Moore's speech was integral to Bors's tax evasion. Meredith and Moore instructed Bors how to evade taxes through a pure trust, sold the pure trust to Bors, and helped him structure the trust to evade taxes. Accordingly, when viewed in the light most favorable to the prosecution, a rational jury could find Meredith and Giordano guilty beyond a reasonable doubt of Count 8.

### 5.  Conspiracy (Count 1)

All three defendants were convicted of conspiracy, in violation of 18 U.S.C. § 371. The statute states:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 371. To prove a conspiracy under the "defraud clause" of this statute, "the government need only show (1) [the defendant] entered into an agreement (2) to obstruct a lawful function of the government (3) by deceitful or dishonest means and (4) at least one overt act in furtherance of the conspiracy." *United States v. Caldwell*, 989 F.2d 1056, 1059 (9th Cir. 1993).

The indictment alleged eighty-one overt acts, including the mail fraud charges discussed above. The verdict forms did not specify which of the overt acts formed the basis for the conspiracy convictions.

**[7]** As described in the previous sections, there was sufficient evidence for the jury to conclude the defendants engaged in a conspiracy that was not protected by the First Amendment. Numerous customers testified that the defendants helped them evade their federal and state tax obligations. Meredith was the architect of the "pure trust" scheme, instructing her employees and customers how to evade taxes. Meredith also trained employees to sell pure trusts. Giordano created the pure trusts and drafted response letters to the IRS on behalf of customers. Bybee sold pure trusts and served as a trustee for customers. The conspiracy involved far more than mere advocacy of tax evasion. Accordingly, there was sufficient evidence for a rational jury to conclude that the defendants conspired to defraud the government.

## B. False representation of a social security number

Counts 13 and 14 charge Meredith with violating 42 U.S.C. § 408(a)(7)(B), which criminalizes the false representation of

"a number to be the social security account number assigned by the Commissioner of Social Security to him or to another person, when in fact such number is not the social security number assigned by the Commissioner of Social Security to him or to such other person" if that false representation is made with intent to deceive. The false representation must be made

> for the purpose of causing an increase in any payment authorized under this subchapter [42 USCS §§ 401 et seq.] (or any other program financed in whole or in part from Federal funds), or for the purpose of causing a payment under this subchapter [42 USCS §§ 401 et seq.] (or any such other program) to be made when no payment is authorized thereunder, or for the purpose of obtaining (for himself or any other person) any payment or any other benefit to which he (or such other person) is not entitled, or for the purpose of obtaining anything of value from any person, *or for any other purpose*.

42 U.S.C. § 408(a)(7) (emphasis added).

The indictment alleged that on July 9, 1998, Meredith opened two checking accounts under her name, each with a false Social Security number.

Meredith contends that criminalizing the use of a number, other than a Social Security number, to open a bank account is "at odds" with the Privacy Act of 1974, Pub. L. 93-579. That act states that it is unlawful for any government agency "to deny to any individual any right, benefit, or privilege provided by law because of such individual's refusal to disclose his social security account number." 5 U.S.C. § 552(a) (note). This argument fails, however, because the requirement to disclose the Social Security number comes from the bank, not from a government agency.

**[8]** Meredith next asserts that 42 U.S.C. § 408(a)(7)(B) is impermissibly vague because no statute required the use of a social security number to open a bank account. We agree with the First Circuit's conclusion that Section 408(a)(7)(B) is "expansive but not at all vague" because it "emphasizes that an intended or accomplished alteration must be purposeful and not inadvertent." *United States v. Persichilli*, 608 F.3d 34, 39 (1st Cir. 2010). Meredith cites no caselaw from this circuit or any other court that would lead to another conclusion than that reached in *Perischilli*.

Finally, Meredith contends that there is insufficient evidence to support her conviction because the government did not call any witnesses who saw her sign the bank cards. This argument is unavailing because her signature was on many other documents that were introduced into evidence. *See United States v. Woodson*, 526 F.2d 550, 551 (9th Cir. 1975) ("In the absence of extreme or unusual circumstances . . . we see no reason why handwriting comparisons cannot be made by jurors, and conclusions drawn from them, either in the presence or absence of expert opinion.").

## C. Passport fraud

Count 15 charged Meredith with passport fraud, in violation of 18 U.S.C. § 1542, which criminalizes willfully and knowingly making

> any false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws.

18 U.S.C. § 1542. On January 7, 1998, Meredith applied for a passport replacement, claiming that her passport had been stolen in an airplane in Denver. On the passport application,

she stated that she had not previously reported a passport lost or stolen. In fact, she stated on a November 22, 1996 application that her previous passport had been stolen at "the Chicago airport." Because these statements clearly contradict one another, she lied on at least one of the applications.

**[9]** Meredith asserts that there was no evidence that she willfully or knowingly made the false statement. She contends that she merely "forgot she had made a previous request for a replacement passport years before and inadvertently checked the wrong box on the Form which queried whether she had previously reported a Passport lost or stolen." Viewing the evidence in the light most favorable to the prosecution, Meredith's argument fails. Given the short amount of time between the applications and the similarity between the reasons that she asserted for her loss of passport, it is unlikely that she did not know that she was making a false statement.

**[10]** Meredith next contends that there was insufficient evidence because this error was not "material." This argument is unavailing because the passport fraud statute does not require that the false statement be material. *See* 18 U.S.C. § 1542. Accordingly, we find that the evidence was sufficient to support Meredith's conviction for passport fraud.

## II. Use of misdemeanors as overt acts for conspiracy count

In support of the conspiracy count, the indictment lists eighty-one overt acts, eighteen of which involved the defendants' failure to file income tax returns or pay taxes. Separately, in Counts 16 through 35, the indictment charges the defendants with misdemeanor failure to file income tax returns, in violation of 26 U.S.C. § 7203, which carries a maximum penalty of one year in prison and a $25,000 fine. The jury found Meredith, Bybee, and Giordano guilty of the conspiracy count, but the verdict forms did not require the jury to specify which overt acts were the basis for the conviction.

Giordano contends that the indictment improperly alleged that the defendants' misdemeanor failure to file federal income tax returns was the basis for the felony conspiracy conviction. Giordano relies on *Spies v. United States*, 317 U.S. 492 (1943). In that case, the indictment contained a single count setting forth the felony charge of willful attempt to defeat and evade income tax. *Id.* at 494. Willful failure to file a return and willful failure to pay income tax are both misdemeanors, but the government contended that when the two are combined, they constitute a felony. The Supreme Court rejected that argument and reversed the felony conviction. *Id.* at 497. *Spies* is inapplicable because the felony conspiracy count here is not the same as two misdemeanors adding up to a different felony. The felony conspiracy count is for an agreement to obstruct a lawful function of the government, with eighty-one overt acts underlying it. These overt acts included misdemeanor failure to file federal income tax returns. *Spies* acknowledges that "[a] felony may, and frequently does, include lesser offenses in combination either with each other or with other elements." *Id.*

[11] Giordano has not cited any other cases that would prevent misdemeanor crimes from being the overt acts that support a conspiracy conviction.[2] Indeed, Giordano's argument is fatally flawed because she relies on the unsupported assumption that overt acts must be stand-alone felonies. We have never imposed such a requirement, and we will not begin now. Accordingly, we reject Giordano's argument that the indictment improperly included failure to file among the overt acts in the conspiracy count.

---

[2]The conspiracy statute states: "If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor." 18 U.S.C. § 371. However, this only applies to the "offense" clause of the conspiracy statute, not the "defraud" clause, which is at issue here. *See United States v. Tuohey*, 867 F.2d 534, 538 (9th Cir. 1989).

### III.   Jury instruction for failure to file

**[12]** The statute that criminalizes the failure to file income taxes, 26 U.S.C. § 7203, states:

> Any person required under this title to pay any esti-mated tax or tax, or required by this title or by regu-lations made under authority thereof to make a return, keep any records, or supply any information, who *willfully* fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties pro-vided by law, be guilty of a misdemeanor . . .

26 U.S.C. § 7203 (emphasis added); *see United States v. Bro-die*, 858 F.2d 492, 496 n.3 (9th Cir. 1988), *overruled on other grounds by United States v. Morales*, 108 F.3d 1031 (9th Cir. 1997) ("Specific intent or willfulness is an element of a sec-tion 7203 violation.").

In Jury Instruction No. 50, the court instructed the jury that a conviction for failure to file income tax returns requires the government to prove beyond a reasonable doubt:

> 1.   First, the defendant was required by law or regu-lation to file a tax return concerning his or her income for the calendar year alleged in the indict-ment;

> 2.   Second, the defendant failed to file such a return at the time required by law; and

> 3.   Third, in failing to file the return the defendant *acted willfully for the purpose of evading his or her duty under the tax laws* and not as a result of acci-dent or negligence.

(emphasis added). In Jury Instruction No. 55, the court instructed the jury that:

> For the crime of willful failure to file a tax return, the government is not required to show that a tax is due and owing from the defendant. *Nor is the government required to prove an intent to evade or defeat any taxes*.
>
> A person is required to file a return if his or her gross income exceeds the trigger amount for filing for the calendar year at issue, even though the person may be entitled to deductions, credits or offsets to that income so that no tax is due.
>
> *The term willfully as used herein is defined elsewhere in these instructions*.

(emphasis added). In Jury Instruction No. 53, the court instructed the jury that:

> By law, the payment of income taxes is not voluntary in the sense of it being optional. A person is required to file a federal income tax return for any calendar year in which he or she has gross income in excess of the minimum filing requirement.
>
> The tax laws are valid, constitutional and allow for the direct taxation of income from whatever source derived, including salaries, wages and profits from business.

On appeal, Giordano asserts that the three instructions "considered together are contradictory and confusing" because Instruction 50 states that the government must prove that the defendants' failure to file income tax returns was for the purpose of "evading his or her duty under the tax laws," while Instruction 55 states that the government need not prove

"the intent to evade or defeat any taxes," and Instruction 53 discusses the requirement to pay income taxes and file a tax return.

**[13]** The government correctly responds that the court's instructions reflect the law and are not contradictory. Jury Instruction 55 does not state that the government is not required to prove willfulness. Instead, that instruction states that willfully "is defined elsewhere in these instructions," and Jury Instruction 52 defines willfully as an act "done voluntarily and intentionally and with the specific intent to do something the law forbids; that is to say with a purpose either to disobey or disregard the law." This definition of willfulness tracks our precedent. *See United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) ("Willfulness requires a specific intent to do something the law forbids; a general intent to commit the proscribed act is not enough.").

**[14]** Jury Instruction 55 correctly states that the government is not "required to prove an intent to evade or defeat any taxes." Intent to evade or defeat taxes is merely one possible way to establish willfulness. Any voluntary act committed with the specific intent to disobey or disregard the law qualifies as willfullness. *See United States v. Mousavi*, 604 F.3d 1084, 1092 (9th Cir. 2010) ("In the context of criminal statutes, the word 'willful' generally indicates a requirement of specific intent."). Moreover, Giordano cites no authority that requires us to reverse a verdict because a jury instruction was "contradictory and confusing." Accordingly, the district court's instructions regarding failure to file did not constitute an abuse of discretion.

## IV.   Restitution

Giordano and Meredith challenge their restitution orders, which are based on the amount of money that the federal and state governments lost because of their illegal activities.

### A. Giordano

The district court ordered Giordano to pay a total of $292,422.97 in restitution ($199,606.12 to the IRS, and $92,816.85 to California). The court based its calculation on calculations of Giordano's gross income from the IRS and Probation Office, and the resulting tax losses to the state and federal governments.

In her sentencing position paper, Giordano offered a declaration from a "tax resolution specialist," attesting that he filed Giordano's tax returns from 1994 through 2004, and that "the full tax liability with penalties and interest will not be know (sic) until all returns are assessed." The court failed to consider this evidence in its restitution calculation, and instead relied solely on the information provided by the Probation Office.

**[15]** The government concedes that Giordano's restitution order should be vacated for a recalculation of the proper amount. *See United States v. Najjor*, 255 F.3d 979, 985 (9th Cir. 2001) (requiring the district court to "consider all the evidence pertaining to the restitution order and make an independent determination of the [victim's] actual loss"). Accordingly, we vacate Giordano's restitution order and order the district court to recalculate the correct amount, considering the information that Giordano provided.

### B. Meredith

Meredith raises various challenges to her restitution order. None of them require us to vacate her restitution order.

First, Meredith claims that the requirements to pay both back taxes and restitution constitutes "unlawful 'double recovery.' " Meredith cites no authority for this argument. Moreover, the court's judgment explicitly provides that any

restitution payments are credited toward Meredith's back tax obligations.

Next, Meredith claims that the restitution order is "impermissibly based on 'relevant conduct' rather than based on the amounts for the years of conviction, charged in the indictment." Meredith cites no support for this argument. Indeed, we have held that restitution orders can include losses caused by related conduct for which the defendant was not convicted. *See United States v. Brock-Davis*, 504 F.3d 991, 998-99 (9th Cir. 2007).

**[16]** Meredith also contends that her restitution orders should be vacated because the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A, does not apply to Title 26 income tax-related offenses. Meredith is correct that the MVRA does not apply to Title 26 income tax offenses, but it *does* apply the Section 371 conspiracy offenses. *See United States v. Kubick*, 205 F.3d 1117, 1128-29 (9th Cir. 1999). Accordingly, this challenge fails.

## CONCLUSION

For the foregoing reasons, and those stated in the accompanying memorandum disposition, the convictions and the sentences for Meredith, Giordano, and Bybee are affirmed, with the exception of Giordano's restitution order, which is vacated and remanded for recalculation.

**AFFIRMED in part and VACATED AND REMANDED in part.**