**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee*,

v.

ROBERT TURCHIN,
        *Defendant-Appellant*.

No. 18-10464

D.C. No.
2:15-cr-00161-
GEB-4

OPINION

Appeal from the United States District Court
for the Eastern District of California
Garland E. Burrell, Jr., District Judge, Presiding

Argued and Submitted October 13, 2020
San Francisco, California

Filed January 3, 2022

Before: Ferdinand F. Fernandez, Kim McLane Wardlaw,
and Daniel P. Collins, Circuit Judges.

Opinion by Judge Collins;
Partial Concurrence and Partial Dissent by
Judge Fernandez

# SUMMARY[*]

## Criminal Law

The panel affirmed in part, reversed in part, and vacated in part Robert Turchin's jury conviction and sentence arising from his participation in a scheme to issue California commercial driver's licenses to persons who had not passed the requisite tests.

Turchin was convicted of three counts of fraud involving identification documents in violation of 18 U.S.C. § 1028(a)(1) and one count, under 18 U.S.C. § 371, of conspiracy to violate the prohibitions on bribery concerning a program receiving federal funds under 18 U.S.C. § 666(a)(1)(B) and (a)(2) and the prohibitions on fraud involving identification documents under § 1028(a).

The panel held that Turchin's actions fell within the scope of conduct covered by § 1028(a)(1), which imposes punishment on anyone who "knowingly and without lawful authority produces an identification document."

Reversing in part, the panel held that the government did not properly establish the requisite nexus to commerce to support the three § 1028 charges or the conspiracy charge to the extent it was based on § 1028. As to this issue, the panel exercised its discretion to depart from the rule that court will not consider matters on appeal that are not specifically and distinctly argued in the opening brief. The panel held that

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the district court plainly erred in instructing the jury on federal nexus under § 1028(c)(1), which provides that the requisite federal nexus exists if "the identification document . . . is or appears to be issued by or under the authority of the United States or a sponsoring entity of an event designated as a special event of national significance."  The panel held that the phrase "United States" in § 1028(c)(1) refers only to the national government, and does not refer broadly to the United States and all of its component parts, including the States.  Accordingly, the district court plainly erred in instructing the jury that the federal nexus required by § 1028(c)(1) was automatically satisfied merely by showing that the identification document in question was issued by a state government.  The panel held that this plain error affected Turchin's substantial rights and seriously affected the fairness, integrity, or public reputation of the judicial proceedings.  The panel held that, under the proper instructions, the jury could not have relied on § 1028(c)(1), and the government's showing with respect to the two other alternatives for federal nexus in § 1028(c)(3)(A) and § 1028(c)(3)(B) was at least open to debate by reasonable jurors, and was not so overwhelming that reversal would impugn the integrity or fairness of the proceedings.

The panel nonetheless addressed the sufficiency of the evidence on the other two legally valid federal nexus alternatives under § 1028(c) because if the evidence were insufficient, retrial would be barred by the Double Jeopardy Clause.  The panel held that, on the record at trial, a reasonable jury could conclude that Turchin's production of California driver's licenses to the particular unqualified drivers at issue affected interstate commerce under § 1028(c)(3)(A).

Affirming in part, the panel rejected Turchin's challenge to the sufficiency of the evidence supporting the federal nexus element of the alleged conspiracy to violate § 666. Reviewing for plain error, the panel also rejected Turchin's contention that, because there was no evidence that he actually took any bribes, his conviction for conspiring to violate § 666(a)(1)(B) and § 666(a)(2) was not supported by sufficient evidence.

The panel rejected Turchin's challenge of the sufficiency of the evidence to establish his liability under a *Pinkerton* theory on count 8, one of the § 1028(a)(1) charges.

In summary, the panel reversed Turchin's conviction on the § 1028(a)(1) counts and his conviction on the conspiracy count to the extent that the object of the conspiracy was a violation of § 1028, and remanded for potential retrial of those charges. The panel affirmed Turchin's conviction on the conspiracy count to the extent that the object of the conspiracy was a violation of § 666(a)(1)(B) and § 666(a)(2). The panel vacated Turchin's sentence in its entirety. The panel remanded for proceedings consistent with its opinion.

Concurring in part and dissenting in part, Judge Fernandez concurred with the majority's decision with the exception of Part III-A. Dissenting as to Part III-A, in which the majority found plain error in the jury instruction on nexus to commerce and reversed the conviction on the § 1028(a)(1) counts, Judge Fernandez wrote that the error was not obvious, and it did not present an extraordinary circumstance that should encourage the court of appeals to intervene and create an issue not pressed upon it by the parties themselves.

**COUNSEL**

Meredith Fahn (argued), San Jose, California, for Defendant-Appellant.

Rosanne L. Rust (argued), Assistant United States Attorney; Camil A. Skipper, Appellate Chief; McGregor W. Scott, United States Attorney; United States Attorney's Office, Sacramento, California; for Plaintiff-Appellee.

**OPINION**

COLLINS, Circuit Judge:

Robert Turchin appeals his conviction and sentence arising from his participation in a scheme to issue California commercial driver's licenses to persons who had not passed the requisite tests. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm in part, reverse in part, vacate in part, and remand.

**I**

Turchin worked as a licensing registration examiner at the California Department of Motor Vehicles ("DMV") office in Salinas, California. As a licensing examiner, Turchin was able to access the DMV database and enter test scores for applicants seeking California commercial driver's licenses ("CDLs"). The Government's theory at trial was that Mangal Gill, who owned a truck-driving school, paid Turchin and another DMV employee, Emma Klem, to enter false information into the DMV database stating that specified persons identified by Gill had obtained passing scores on DMV exams required for applicants seeking

CDLs.  After undercover Department of Homeland Security ("DHS") operatives obtained illegitimate CDLs through this scheme, Turchin was indicted, as were Gill, Klem, and various other participants.  Specifically, Turchin was charged with (1) three counts of fraud involving identification documents in violation of 18 U.S.C. § 1028(a)(1); and (2) one count, under 18 U.S.C. § 371, of conspiracy to violate (i) the prohibitions on bribery concerning a program receiving federal funds, *see id*. § 666(a)(1)(B) and (a)(2); and (ii) the prohibition on fraud involving identification documents, *see id*. § 1028(a)(1).

At Turchin's jury trial, the DHS operatives testified that they were able to obtain CDLs without passing the required tests and that they had received hard copies of those licenses in the mail.  Klem, who had pleaded guilty, testified against Turchin, stating that Gill paid her to alter DMV records by entering false passing test scores and that he told her that, if she could not update a given record, he would "have Robert [Turchin] finish it."  Salinas DMV supervisor Julie Ferreira testified that she noticed on multiple occasions that Turchin entered passing test scores for applicants who had not passed required tests.

The prosecution also offered evidence of text messages containing the California driver's license numbers of particular individuals, which Gill sent to Turchin shortly before Turchin updated the corresponding records for those persons with false passing scores.  For example, Gill sent at least three texts containing license numbers to Turchin on March 27–28, 2015, and later in the day on March 28, Turchin updated the corresponding DMV records with phony passing scores.  Then, on March 29, Turchin sent Gill a text that listed the last three digits of these license numbers, together with the notations "closed" and "postage due."  A

search of Turchin's SUV a few days later revealed at least four envelopes stuffed in a corner of the cargo trunk area. Those envelopes contained a total of over $10,000 in various denominations.  Klem testified that Gill similarly paid her cash in envelopes.

The jury convicted Turchin on all counts, and it made a special finding that Turchin had conspired both to violate the bribery statute and to commit identity fraud.

## II

Viewing the underlying facts in the light most favorable to the verdict, we review de novo Turchin's argument that his actions fell outside the "scope of the conduct" covered by 18 U.S.C. § 1028(a)(1).  *See United States v. Deeb*, 175 F.3d 1163, 1166–67 (9th Cir. 1999).[1]   We reject this contention.

Turchin was charged under the language of § 1028(a)(1) that imposes punishment on anyone who "knowingly and without lawful authority produces an identification document."  18 U.S.C. § 1028(a)(1).  The California CDLs that Turchin produced were "identification documents" within the plain meaning of the statutory definition of that term.  *See id.* § 1028(d)(3) ("identification document" includes a "document made or issued by or under the

---

[1] Turchin did not move for a judgment of acquittal below, nor did he submit proposed jury instructions reflecting all of the various legal requirements that he now insists the Government should have met. "[A]rguably we could deem [such] issue[s] forfeited and therefore subject only to plain error review," but to the extent that the Government has forfeited any such forfeiture objections, "we will proceed to consider th[ese] issue[s] de novo." *United States v. Kuzma*, 967 F.3d 959, 966 n.6 (9th Cir. 2020).

authority of . . . a State . . . which, when completed with information concerning a particular individual, is of a type intended or commonly accepted for the purpose of identification of individuals"). Given that Turchin knew that the recipients had not completed the eligibility requirements for these CDLs, he knowingly produced those identification documents "without lawful authority." *Id*. § 1028(a)(1). To the extent that Turchin contends that an identification document is produced "without lawful authority" only when it is issued to a "misidentified" person, there is no basis in the statutory language for imposing such a limitation. There are any number of ways in which the requisite "lawful authority" for producing an identification document might be lacking, and nothing in the statute limits its coverage to that specific situation. *See United States v. Osuna-Alvarez*, 788 F.3d 1183, 1185–86 (9th Cir. 2015) (rejecting narrow reading of "without lawful authority" in 18 U.S.C. § 1028A, which defines aggravated identity theft, and explaining that "[t]his language clearly and unambiguously encompasses situations like the present, where an individual grants the defendant permission to possess his or her means of identification, but the defendant then proceeds to use the identification unlawfully").

Turchin also argues that the documents he produced do not qualify as "false identification documents" as defined in § 1028(d)(4), but even assuming that is true, it makes no difference here. Turchin was charged with, and convicted of, violating the portion of § 1028(a)(1) that criminalizes producing "identification document[s]" without lawful authority, not the portion of that subsection that proscribes producing "*false* identification document[s]" without lawful authority. 18 U.S.C. § 1028(a)(1) (emphasis added).

**III**

Turchin contends that the Government failed to establish the requisite nexus to commerce to support either the alleged violations of § 1028 or the alleged conspiracy to violate § 1028 and § 666.  We agree that the Government did not properly establish the requisite nexus to support the § 1028 charges or the conspiracy charge to the extent that it is based on § 1028, but not for the reasons that Turchin identifies. We find no reversible error as to the conviction for conspiring to violate § 666.[2]

**A**

Any charge of unlawful production of an identity document under § 1028(a)(1) requires a showing of a federal nexus in one of three alternative ways: (1) the identification document "is or appears to be issued by or under the authority of the United States or a sponsoring entity of an event designated as a special event of national significance";

---

[2] Turchin was charged and convicted under the portion of the conspiracy statute that punishes conspiring "to commit any offense against the United States," *see* 18 U.S.C. § 371, with the objects of the conspiracy here being bribery in violation of 18 U.S.C. § 666(a)(1)(B), (a)(2) and production of identification documents without lawful authority in violation of § 1028(a)(1).  The jury made a specific finding that there was both a conspiracy to violate § 1028 and a conspiracy to violate § 666.  Therefore, any error as to the conspiracy to violate § 1028 would not affect the conviction for conspiring to violate § 666.  *Cf. United States v. Choy*, 309 F.3d 602, 608 (9th Cir. 2002) (*general* verdict on multi-object conspiracy must be vacated if one of the objects was based on a legally invalid theory).  Moreover, because Turchin was *not* charged under the separate clause that prohibits conspiracy "to defraud the United States," 18 U.S.C. § 371, the Government was not required to prove that Turchin intended to defraud the United States.  *See United States v. Meredith*, 685 F.3d 814, 825 n.2 (9th Cir. 2012) (distinguishing between the "offense" clause and "defraud" clause of § 371).

(2) the prohibited production "is in or affects interstate or foreign commerce"; or (3) the identification document "is transported in the mail in the course of the production . . . prohibited by this section." 18 U.S.C. §§ 1028(c)(1), (3)(A), (B); *see also id*. § 1028(a).[3]

The jury was instructed on all three alternatives, but in his opening brief Turchin challenged the legal and factual adequacy of the Government's showing only with respect to the second and third alternatives.  The Government's answering brief likewise confined its discussion to the second and third alternatives and never mentions the first. At first blush, that is not surprising, because the first alternative is obviously inapplicable as a matter of law: the California CDLs at issue here were not documents "issued by or under the authority of the United States" (such as a passport), nor is the California DMV the "sponsoring entity of an event designated as a special event of national significance."  18 U.S.C. § 1028(c)(1).  In examining the record on this issue of federal nexus, however, we noted that the district court's written and oral jury instructions both described the first federal nexus alternative as follows: "the identification document . . . was or appeared to be issued by or under authority *of the State of California, or a political subdivision of the State*" (emphasis added).  Accordingly, we asked the parties to submit supplemental briefs addressing whether this instruction was a plain error that we should consider even though the parties had not called it to our attention.  *See* FED. R. CRIM. P. 52(b) ("A plain error that

---

[3] Section 1028(c) also states that the requisite federal nexus is automatically met when the charged offense involves possession of an identification document, with intent that it be used to defraud the United States, in violation of § 1028(a)(4), *see* 18 U.S.C. § 1028(c)(2), but that alternative obviously has no application in the context of a charge of unlawful production in violation of § 1028(a)(1).

affects substantial rights may be considered even though it was not brought to the court's attention."). Turchin has argued, in his supplemental brief, that the § 1028(c)(1) instruction was plainly erroneous and warrants reversal. In its supplemental brief, the Government asserts that we should decline to consider this issue and that, if we do address it, we should hold that the instruction rests on a legally correct interpretation of § 1028(c)(1). We agree with Turchin.

## 1

The Government contends that we should not address any issue about § 1028(c)(1) given that Turchin failed to argue in his opening brief that the district court's instructions concerning that section were plainly erroneous. *See*, *e.g.*, *United States v. Salman*, 792 F.3d 1087, 1090 (9th Cir. 2015). But the rule that we will not consider "matters on appeal that are not specifically and distinctly argued in appellant's opening brief" is not ironclad, and we have departed from it when, *inter alia*, the "failure to do so would result in manifest injustice" or the "defense of the opposing party" has not been prejudiced. *Id*. (citations and internal quotation marks omitted). We conclude that it is appropriate to exercise our discretion to depart from that rule here.

As an initial matter, the asserted plain error in the § 1028(c)(1) instruction is not an entirely new "matter," because the issue of federal nexus under § 1028(c) *was* raised in the opening brief, thereby requiring us to consider whether there was prejudicial error in the application of that statute. The Government itself noted in its answering brief that § 1028(c) provides alternative options for finding a federal nexus, and it conspicuously relied on only two of the three enumerated in the statute, namely, those listed in § 1028(c)(3)(A) and § 1028(c)(3)(B). Fairly construed, the

Government's arguments rested on the implicit premise that the third option in § 1028(c)(1) was *not* applicable here: indeed, if the opposite were true, and the jury had been properly permitted to rest its verdict on § 1028(c)(1), then Turchin's claims of evidentiary insufficiency concerning the other alternatives would be harmless and we could not grant Turchin relief on those claims. *See Griffin v. United States*, 502 U.S. 46, 52, 59 (1991). In short, we could not properly dispose of the issues that the parties raised in this appeal *without* examining the record to determine which of the three options were presented to the jury and in what manner. And upon doing so, we noted that the Government *had* relied on all three alternatives below, and that it affirmatively argued to the jury, in accordance with the instructions, that the first alternative was satisfied here because the identifications were "issued under the authority of some *state* government" (emphasis added). Accordingly, whether or not the parties specifically called § 1028(c)(1) to our attention, some consideration of that subsection was unavoidably embedded in the resolution of the issues that were presented here.

On this record, we conclude that consideration of this embedded sub-issue is necessary to avoid manifest injustice and that the Government has not been prejudiced. Having been required by the parties' arguments to examine the record concerning how the § 1028(c) issue was presented to the jury, we cannot be expected to close our eyes to the rather obvious and prejudicial mistake that stared out at us and that, as we explain below, meets all of the requirements of the plain-error doctrine. Moreover, because the parties have been allowed to submit supplemental briefing, the Government has had a full and fair opportunity to address the merits of the issue. *See Salman*, 792 F.3d at 1090. Although the Government notes that it did not have the opportunity to address this issue at oral argument, it did not

request further argument in its brief. And given that the Government's position on the merits is plainly lacking in merit, we perceive no need to *sua sponte* reset this case for argument.

The Government also argues that our consideration of the § 1028(c)(1) issue would violate the "principle of party presentation," under which a reviewing court generally "rel[ies] on the parties to frame the issues for decision." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). But that sub-issue is already embedded in the issues that the parties have framed for our decision, and it would be manifestly unjust not to consider it. More broadly, the Government's expansive reading of *Sineneng-Smith* seems hard to square with the language and purpose of Rule 52(b), which expressly allows courts to "consider[]" a "plain error that affects substantial rights . . . *even though it was not brought to the court's attention*." FED. R. CRIM. P. 52(b) (emphasis added); *cf. Barrados-Zarate v. Barr*, 981 F.3d 603, 605 (7th Cir. 2020) (noting that "[s]ome statutes and rules permit review for plain error, but the Immigration and Nationality Act lacks such an exception to the norm of party presentation"); *cf. also Greenlaw v. United States*, 554 U.S. 237, 247 (2008) ("This Court has indeed noticed, and ordered correction of, plain errors not raised by defendants, but we have done so only to benefit a defendant who had himself petitioned the Court for review on other grounds."). In *Sineneng-Smith*, by contrast, the panel *sua sponte* raised issues that the parties had not raised, and it expressly refused to apply the strict "plain error" standard that the Government argued would apply to those arguments and could not be met. *United States v. Sineneng-Smith*, 910 F.3d 461, 469 (9th Cir. 2018). Given that—as we explain below—the demanding standards of Rule 52(b) are satisfied here—our consideration of the plain error concerning the § 1028(c)(1)

issue bears no resemblance to the "radical transformation" of the case undertaken in *Sineneng-Smith*.   140 S. Ct. at 1581–82.

**2**

We disagree with the Government's argument that the jury instruction's interpretation of § 1028(c)(1) was not plain error.  The standards for evaluating "plain error" were recently summarized by the Supreme Court as follows:

> To establish eligibility for plain-error relief, a defendant must satisfy three threshold requirements.  *First*, there must be an error.  *Second*, the error must be plain.  *Third*, the error must affect "substantial rights," which generally means that there must be "a reasonable probability that, but for the error, the outcome of the proceeding would have been different."  If those three requirements are met, an appellate court may grant relief if it concludes that the error had a serious effect on "the fairness, integrity or public reputation of judicial proceedings."

*Greer v. United States*, 141 S. Ct. 2090, 2096–97 (2021) (citations omitted) (emphasis in original).  All of these requirements are satisfied in this case.

As relevant here, § 1028(c)(1) provides that the requisite federal nexus exists if "the identification document . . . is or appears to be issued by or under the authority of the United States or a sponsoring entity of an event designated as a special event of national significance."   18 U.S.C.

§ 1028(c)(1).[4]  The Government notes that, by using the term "identification document," this provision carries over the definition of that term in § 1028(d)(3), which provides:

> the term "identification document" means a document made or issued by or under the authority of the United States *Government, a State, political subdivision of a State*, a sponsoring entity of an event designated as a special event of national significance, a foreign government, political subdivision of a foreign government, an international governmental or an international quasi-governmental organization which, when completed with information concerning a particular individual, is of a type intended or commonly accepted for the purpose of identification of individuals.

*Id.* § 1028(d)(3).    The Government argues that, when § 1028(c)(1)'s federal nexus provision refers to the *subset* of documents described in § 1028(d)(3) that are issued by "the United States" or by a "sponsoring entity of an event designated as a special event of national significance," *id.* § 1028(c)(1), the phrase "United States" refers "broadly to the United States *and all of its component parts, including the States*" (emphasis added).  That is wrong, and plainly so.

Nothing in the text of § 1028(c)(1) remotely suggests that, in using the familiar term "United States" to refer to the entity under whose "authority" the identification was issued,

---

[4] Section 1028(c)(1) also contains an additional clause concerning "document-making implement[s]," but that clause has no application to Turchin's case.

Congress intended to depart from the ordinary referent of that phrase, which is the *national* government, and to instead refer to each of the 50 State governments as well.[5]  On the contrary, the obvious difference in language between § 1028(c)(1) and § 1028(d)(3) confirms that the phrase "United States" is used in accordance with its ordinary meaning.  The definition of "identification document" in § 1028(d)(3) broadly includes identifying documents that are issued by a wide range of governmental entities, including federal, foreign, and international agencies, as well as "a State, [or a] political subdivision of a State."  18 U.S.C. § 1028(d)(3).  But in identifying the *subset* of documents from that enumerated list that, without more, automatically establish a sufficient federal nexus, § 1028(c)(1) includes only two of the items on § 1028(d)(3)'s list and omits all of the others—that is, it includes only identification documents "issued by or under the authority of [1] the United States or [2] a sponsoring entity of an event designated as a special event of national significance."  *Id*. § 1028(c)(1).  The obvious omission of the phrase "a State, [or a] political subdivision of a State" from the smaller list in § 1028(c)(1) confirms that an identification document produced by a *State* would not be sufficient to satisfy the federal nexus described in § 1028(c)(1).  *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or

---

[5] The criminal code's definition of the "United States" only defines how that term should be understood when it is used "in a territorial sense," and the Government does not rely on that definition here. *See* 18 U.S.C. § 5 ("The term 'United States,' as used in this title in a territorial sense, includes all places and waters, continental or insular, subject to the jurisdiction of the United States, except the Canal Zone.").

exclusion.") (simplified).  For such a document, the required federal nexus would exist only if there were some *other* federal connection, such as an effect on interstate commerce or a use of the U.S. mail.  *Id.* § 1028(c)(3)(A), (B).[6]

Accordingly, the district court plainly erred in instructing the jury that the federal nexus required by § 1028(c)(1) was automatically satisfied merely by showing that the identification document in question was issued by a *state* government.  The first two elements of the "plain error" test—that there be an error and that it be plain—are thus satisfied here.

Turning to the next element of that test, we conclude that this plain error clearly affected Turchin's "substantial rights."  Because it was undisputed at trial that the identification documents Turchin created were "or appeared to be issued by or under authority of the State of California," it is not only possible, but entirely probable, that the jury

---

[6] The Government contends that, because § 1028(c)(1) uses the phrase "United States" rather than (as in § 1028(d)(3)) "United States Government," Congress thereby must have intended that § 1028(c)(1) would also reach documents issued by each of the 50 States.  But the terms "United States" and "United States Government" are interchangeable in this context, and the deletion of the word "Government" does not suggest that the remaining term "United States" is suddenly being used in the unusual sense that the Government posits here.  Indeed, we have treated the references to documents issued by the "United States" or the "United States Government" in the various subsections of § 1028 as interchangeably referring to documents that are or appear to be issued "from a federal agency."  *See United States v. Fuller*, 531 F.3d 1020, 1025–26 (9th Cir. 2008).  Had Congress intended identification documents issues by state and local governments to be included in § 1028(c)(1), it presumably would have used the same clear phrase that it used in § 1028(d)(3)'s lengthier list, *viz.*, "a State, [or a] political subdivision of a State."  18 U.S.C. § 1028(d)(3).

relied on the defective instruction in finding that the requisite federal nexus element was met. Nothing in this record permits us to say that the jury must have relied on one of the other two alternatives in the instruction, as opposed to the instruction's plainly erroneous description of § 1028(c)(1). Because it is "'impossible to tell which ground the jury selected,'" the error is prejudicial. *See Griffin*, 502 U.S. at 52 (quoting *Yates v. United States*, 354 U.S. 298, 312 (1957)); *see also id.* at 59 (general verdict must be set aside when "jurors have been left the option of relying upon a legally inadequate theory," as opposed to a factually inadequate theory).

Lastly, we conclude that the error here "seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Alferahin*, 433 F.3d 1148, 1159 (9th Cir. 2006) (simplified). We have recognized that where it is "extremely unlikely that, if properly instructed, the jury would not have convicted" the defendant, *see United States v. Perez*, 116 F.3d 840, 848 (9th Cir. 1997) (en banc), then "the greater threat to the integrity and fairness of judicial proceedings would arise from the reversal of a conviction on flawed jury instructions rather than from affirming an imperfect verdict," *Alferahin*, 433 F.3d at 1159 (citing *Perez*, 116 F.3d at 848). Here, under the proper instructions, the jury could *not* have relied on § 1028(c)(1). The Government's showing with respect to the two other alternatives in § 1028(c)(3)(A) and § 1028(c)(3)(B) was at least open to debate by reasonable jurors, *see infra* at 19–20 & n.7, and was not so overwhelming that reversal here would impugn the integrity or fairness of the proceedings. Finally, we think that the integrity of these proceedings is best preserved by not allowing the Government to tell the jury that it can find federal nexus based solely on a flawed reading of § 1028(c)(1) and then to fail to tell this court,

when the federal nexus issue is raised on appeal, that it did so.

We therefore reverse Turchin's convictions on counts 8 through 10, and on count 2 to the extent that it relies on § 1028 as the object of the charged conspiracy.

**B**

Because, however, Turchin challenges the factual sufficiency of the Government's evidence on both of the other two legally valid federal nexus alternatives, we must resolve that issue despite our reversal of his convictions that are based on § 1028. *See United States v. Lewis*, 787 F.2d 1318, 1323 (9th Cir. 1986) ("Even though we reverse that conviction, we must address the sufficiency of the evidence supporting it, for if the evidence were insufficient, retrial is barred by the Double Jeopardy Clause."). To reject his sufficiency challenge, we need only determine whether sufficient evidence supported one of the two legally sufficient alternatives. *See Griffin*, 502 U.S. at 56–60.

We conclude that, on the record at trial, a reasonable jury could conclude that Turchin's production of CDLs to the particular unqualified drivers at issue "affects interstate . . . commerce." 18 U.S.C. § 1028(c)(3)(A). The testimony established that a "Class A" CDL would allow its holder to "drive a commercial tractor trailer vehicle on the interstate highways" and a "Class B" CDL would permit its holder to drive a "commercial passenger vehicle" on such highways. A jury could reasonably conclude that this connection to interstate commerce, although potentially modest and

indirect, established that Turchin's production of the licenses affected interstate commerce.[7]

## C

We likewise reject Turchin's challenge to the sufficiency of the evidence supporting the federal nexus element of the alleged conspiracy to violate § 666. The required nexus under § 666 is that the person who solicits the illicit thing of value, or who is intended to be influenced or rewarded by the payment, must be an "agent," 18 U.S.C. § 666(a)(1)(B), (2), of an "organization, government, or agency [that] receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance," *id* § 666(b). The Government presented sufficient evidence at trial to establish this element by showing that, for fiscal year 2012–2013, the California DMV received $739,000 from the federal Government and by introducing similar evidence concerning subsequent fiscal years. *See Sabri v. United States*, 541 U.S. 600, 604–08 (2004). Contrary to what Turchin contends, the Government was not required to prove that he knew the DMV received federal funds. *See Torres v. Lynch*, 578 U.S. 452, 468 (2016) ("'[T]he existence of the fact that confers

---

[7] Because this alternative was supported by sufficient evidence, we need not decide whether the Government presented sufficient evidence to show that the identification documents at issue were "transported in the mail in the course of the *production* . . . prohibited" by § 1028, *see* 18 U.S.C. § 1028(c)(3)(B) (emphasis added), as opposed to their "transfer," which is conduct covered by a separate subsection under which Turchin was not charged, *see id*. § 1028(a)(2). The evidence at trial that the documents were transported in the U.S. mail in the course of their *transfer* is overwhelming, but it is less clear that the mailings cited by the Government occurred in the course of their *production*.

federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute.'") (citation omitted).

## IV

Turchin further contends that, because there is no evidence that he actually took any bribes, his conviction for conspiring to violate § 666(a)(1)(B) and § 666(a)(2) is not supported by sufficient evidence.  Reviewing for plain error, *see United States v. Pelisamen*, 641 F.3d 399, 408–09 & n.6 (9th Cir. 2011),[8] we reject this contention.

The crime of conspiracy "does not require completion of the intended underlying offense," but only an agreement to commit the offense and an overt act in furtherance of that agreement.  *United States v. Iribe*, 564 F.3d 1155, 1161 (9th Cir. 2009).   Here, there was sufficient circumstantial evidence from which a jury could reasonably conclude, beyond a reasonable doubt, that Turchin had agreed to accept a thing of value—namely, cash—for entering fraudulent passing scores for applicants seeking California CDLs.  As Turchin concedes, ample evidence showed that a truck-school owner, Mangal Gill, took money from his students to help them obtain such licenses without having to pass the required exams.  The Government presented evidence that Gill sent messages to Turchin with California driver's license numbers and that Turchin fraudulently updated the corresponding applications.  The Government also presented evidence that Turchin sent messages to Gill listing portions of California driver's license numbers with the comment "postage due."  Days after those messages were sent, law

---

[8] In its appellate brief, the Government did raise Turchin's failure to raise this particular issue below.  *Cf. supra* note 1.

enforcement officers found more than $10,000 in cash in envelopes in Turchin's car. The Government also presented testimony from Emma Klem, one of Turchin's coworkers, who said that she was also paid by Gill for similar fraudulent activity and that he paid her cash in envelopes. Although Turchin provides potential alternative readings of the circumstantial evidence, the jury was not required to accept those explanations.

## V

As to the § 1028(a)(1) charge in count 8, Turchin was convicted based on a so-called *Pinkerton* theory, under which "a defendant charged with participating in a conspiracy may be subject to liability for offenses committed as part of that conspiracy, even if the defendant did not directly participate in each offense." *United States v. Grasso*, 724 F.3d 1077, 1089 (9th Cir. 2013). Turchin challenges the sufficiency of the trial evidence to establish such liability and, even though we reverse his conviction on count 8 for other reasons, we must address this issue. *Lewis*, 787 F.2d at 1323. Reviewing for plain error, *see supra* note 8, we reject this argument.

It was undisputed at trial that Klem, rather than Turchin, fraudulently changed the DMV record for the driver's license at issue in count 8. A jury could reasonably find, beyond a reasonable doubt, that there was a conspiracy between Klem and Turchin to work with Gill in obtaining fraudulent California CDLs; that Klem committed the conduct in count 8 during and in furtherance of that conspiracy; and that such action "fell within the scope of the unlawful agreement and could be 'reasonably foreseen as a necessary or natural consequence of the unlawful agreement.'" *United States v. Gonzalez*, 906 F.3d 784, 791 (9th Cir. 2018) (citation omitted). In particular, the evidence

showed that both Klem and Turchin entered false passing scores for license applicants, and that Gill told Klem that if she could not update one of the files, she should "just put it to the side and [he]'ll have Robert [Turchin] finish it." *See supra* at 6. At the very least, there was no plain error.

# VI

In view of our reversal of Turchin's conviction on the § 1028 counts, and of his conviction on the conspiracy charge to the extent that it relies on § 1028, we decline to address the sentencing issues raised by Turchin. Given our disposition, the "sentencing package" has become "unbundled." *United States v. Avila-Anguiano*, 609 F.3d 1046, 1049 (9th Cir. 2010). We therefore vacate Turchin's sentence in its entirety.

\*     \*     \*

We reverse Turchin's convictions on counts 8, 9, and 10, and his conviction on count 2 to the extent that the object of the conspiracy was a violation of § 1028, and we remand for potential retrial of those charges if the Government elects to do so. We affirm Turchin's conviction on count 2 to the extent that the object of the conspiracy was a violation of § 666(a)(1)(B) and § 666(a)(2).[9] We vacate Turchin's

---

[9] We leave it to the district court to address on remand whether, if the Government is permitted to retry count 2 based on an alleged conspiracy to violate § 1028, that count must then be retried in its entirety. *Cf. United States v. Guzman*, 852 F.2d 1117, 1119–20 (9th Cir. 1988) ("The double jeopardy clause precludes the government from dividing a single conspiracy into multiple charges and pursuing successive prosecutions against the defendant.").

sentence in its entirety.    We remand for proceedings consistent with this opinion.

**REVERSED IN PART, AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

---

FERNANDEZ, Circuit Judge, concurring in part and dissenting in part:

I concur with the majority's decision with the exception of Part III-A,[1] as to which I dissent for two reasons.  I note first that the "error" discovered by the majority was not one that I think of as obvious in the normal sense of the word.  Indeed, it was not argued by the parties' lawyers in the district court, or perceived by the district court judge.  Nor was it argued by the parties' lawyers on appeal, or for that matter raised by us at oral argument on October 13, 2020, or for nearly a year thereafter.  Beyond that, I surely do not see it as presenting an extraordinary circumstance[2] that should encourage this court to intervene and create an issue not pressed upon it by the parties themselves.[3]  Moreover, as I see it, even if the error appears rather plain now that it has been pointed out by us, the exercise of our discretion to overturn a conviction requires more than that.  In that respect, I do not agree that on this record Turchin's substantial rights were violated, or that our failure to raise

---

[1] I also dissent as to other parts of the majority decision insofar as they rely on the majority decision regarding Part III-A.

[2] *United States v. Sineneng-Smith*, __ U.S. __, __, 140 S. Ct. 1575, 1581, 206 L. Ed. 2d 866 (2020).

[3] *Id.* __ U.S. at __, 140 S. Ct. at 1579.

the issue and overturn his convictions will have a baleful effect upon judicial proceedings. *See United States v. Olano*, 507 U.S. 725, 732–37, 113 S. Ct. 1770, 1777–1779, 123 L. Ed. 2d 508 (1993).

Thus, I respectfully concur in part and dissent in part.