**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. RHETT IRONS, AKA Luck, AKA Lucky, *Defendant-Appellant.* | No. 20-30056 D.C. No. 2:19-cr-00035-RAJ-1 OPINION |

Appeal from the United States District Court
for the Western District of Washington
Richard A. Jones, District Judge, Presiding

Argued and Submitted June 10, 2021
Seattle, Washington

Filed April 11, 2022

Before: William A. Fletcher, Paul J. Watford, and
Daniel P. Collins, Circuit Judges.

Opinion by Judge Collins;
Dissent by Judge Watford

## SUMMARY[*]

### Criminal Law

The panel affirmed the defendant's convictions, after a jury trial, on charges of conspiracy to distribute fentanyl (21 U.S.C. § 846) and possession of fentanyl with intent to distribute (21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vi)); reversed his conviction on a charge of possession of a firearm in furtherance of that drug trafficking (18 U.S.C. § 924(c)); and remanded for a new trial on the § 924(c) charge.

The defendant contended that the district court's instructions failed adequately to explain the elements of the § 924(c) offense. His chief complaint was that, while the statute required the jury to find that he possessed a firearm "in furtherance of" a drug trafficking crime, the court gave a supplemental instruction, in response to a jury note, that allowed the jury to convict merely by finding that defendant's possession of the gun had a "connection" to the trafficking.

The panel held that the defendant failed to adequately preserve this objection and that, as a result, the panel's review is only for plain error. In so holding, the panel construed Fed. R. Crim. P. 30(d)'s requirement that an objection be made "before the jury retires to deliberate" as applicable to a situation in which the court or a party proposes to give a supplemental jury instruction in response to a note from a jury that is already deliberating. The panel

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

wrote that the fact that the defendant had previously proposed instructions that happened to bear on the point raised in the jury's note is not sufficient to preserve the position that those instructions should then be given in response to the jury's note.

Reviewing for plain error, the panel held:

1.  The district court erred by instructing the jury that the "in furtherance of" requirement in 18 U.S.C. § 924(c)(1)(A) means that "there must be a connection between the firearm" and the alleged drug trafficking offense, thereby improperly permitting the jury to convict without finding that the defendant possessed the firearm with the intent that it further or advance a determination crime.

2.  The error is plain.  Noting that the district court relied on an unpublished decision of this court that directly supported its position, the panel explained that *Henderson v. United States*, 568 U.S. 266 (2013), requires this court to assess whether this court's analysis reveals the question at issue to have a "plain" answer w*ith the benefit of hindsight*. With the advantage of that hindsight, the panel concluded that its textual analysis is sufficiently one-sided, and sufficiently dictates the answer, that the district court's error is "plain."

3.   The defendant carried his burden to show that the error affected his substantial rights because the error in the instruction effectively removed from the jury's consideration the only disputed issue concerning the § 924(c) charge—the defendant's intent in having the gun under his mattress while living in his home.

4. Reversal is warranted because the evidence is not so overwhelming that reversal would impugn the integrity or fairness of the proceedings.

As to the defendant's other arguments concerning his § 924(c) conviction, the panel concluded that a reasonable jury could find beyond a reasonable doubt that the defendant possessed the firearms in furtherance of his drug trafficking; and that on remand the district court must make the requisite reliability findings before admitting any expert testimony concerning general practices of drug traffickers.

As to the predicate drug trafficking convictions, the panel rejected the defendant's arguments (1) that the district court erred in instructing the jury that, in determining the amount of drugs involved in the conspiracy charge and the possession-with-intent-to-distribute charge, the "government does not have to prove that the defendant knew the quantity of the controlled substance"; and (2) that the district court plainly erred by instructing the jury that "a defendant who is a member of a conspiracy to distribute controlled substances, including fentanyl, is responsible for . . . the amount of fentanyl distributed or intended to be distributed by coconspirators, if the defendant could reasonably foresee that amount to be a necessary or natural consequence of the unlawful agreement."

Dissenting in part, Judge Watford would affirm the defendant's § 924(c) conviction because, in his view, the defendant cannot show that the instructional error affected his substantial rights, given that the government's evidence as to the "in furtherance of" element was quite strong, and the defendant did not show a reasonable probability that, but for the error, the jury would have reached a different result.

**COUNSEL**

Dennis Carrol (argued), Assistant Federal Public Defender, Office of the Federal Public Defender, Seattle, Washington, for Defendant-Appellant.

Michael S. Morgan (argued), Assistant United States Attorney; Brian T. Moran, United States Attorney; United States Attorney's Office, Seattle, Washington; for Plaintiff-Appellee.

---

**OPINION**

COLLINS, Circuit Judge:

Rhett Irons was convicted, after a jury trial, on charges of conspiracy to distribute fentanyl, possession of fentanyl with intent to distribute, and possession of a firearm in furtherance of that drug trafficking. We affirm his convictions on the two drug trafficking charges. However, we reverse his conviction on the firearms charge due to a faulty jury instruction, and we remand for a new trial on that count only.

**I**

**A**

After a cooperator who had been involved in trafficking fentanyl identified Rhett Irons as his supplier, an undercover agent purchased 199 fentanyl pills from Irons for $4,600 on June 22, 2018. Thereafter, in February 2019, agents obtained and executed a search warrant on Irons' home. The agents conducting the search found 542 fentanyl pills and 341 oxycodone pills in Irons' master bedroom. Agents also

discovered a loaded Glock .380 caliber semiautomatic pistol underneath the queen-sized mattress in that bedroom. The gun was in a holster that contained two fully-loaded magazines, and its grip was visible outside of the holster. In the master bathroom adjacent to Irons' bedroom, agents found cocaine residue, a scale, small baggies, credit cards, and a rolled-up hundred-dollar bill. Agents discovered additional cash totaling more than $52,000 in various other locations throughout the house.

In November 2019, Irons was indicted on three charges: (1) conspiracy to distribute 400 grams or more of a substance containing fentanyl in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vi), 846; (2) possession, with intent to distribute, of 40 grams or more of a substance containing fentanyl in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vi); and (3) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). The indictment identified the two drug trafficking counts as the predicate drug trafficking crimes on which the § 924(c) charge was based.

**B**

In his opening statement at the ensuing jury trial, Irons' counsel conceded that Irons was involved in a drug trafficking conspiracy, that he possessed fentanyl with the intent to distribute, that he possessed a firearm, and that he sold or possessed at least 100 grams of fentanyl. However, he argued that (1) Irons did not possess the firearm "in furtherance of" a drug trafficking crime, as required to convict under the § 924(c) charge, *see* 18 U.S.C. § 924(c)(1)(A); and (2) Irons was not responsible for the quantity of drugs alleged in the conspiracy charge, *i.e.*, "400 grams or more" of a substance containing fentanyl, *see* 21 U.S.C. § 841(b)(1)(A)(vi). Irons' counsel thus indicated

that Irons contested only the conspiracy and firearms charges and not the possession-with-intent-to-distribute charge. Likewise, in closing arguments, Irons' counsel contested only these two specific issues and told the jury that "I'm going to leave it up [to] your deliberative process as to the rest of the counts."

The Government introduced testimony from a number of persons who were involved in Irons' drug trafficking activities, and they stated that many of these transactions took place in Irons' bedroom or the adjoining master bathroom. For example, over an eight-month period, Nicholas Startzman bought thousands of fentanyl pills from Irons for nearly $470,000, and Startzman testified that these transactions occurred "[m]ainly in the master bathroom." Irons' former girlfriend, Deana West, testified that, on any given day, two to four people would go into Irons' bedroom or bathroom to buy drugs. Barry Horn testified that he sold drugs for Irons while living at his house and that, at any point in time, approximately five different people were regularly coming to the home to purchase drugs for redistribution.

The jury heard testimony that the firearm that was under Irons' mattress was readily accessible and would not take long to fire. A detective involved in the search stated that it took "just a couple of seconds" to lift the mattress completely. He also testified that, although there was "no round in the chamber," it would take "less than a second" to chamber a round from the gun's loaded magazine. Another police officer testified to the same effect.

The Government did not present any evidence that Irons had ever held, brandished, or discharged the firearm during a drug transaction. Startzman testified that he had never seen the gun before. West stated that she had seen the gun once when changing the sheets in Irons' bedroom and that Irons

once told her that he was bringing "a gun" with him during a visit to Disneyland. Horn testified that one time when he woke up Irons at his prior residence, Irons reached under the mattress for his pistol in "hysteria." Horn "laughed it off," asking Irons, "Were you going to shoot me?" and Irons said no.

Over Irons' objection, Detective Brandon James was permitted to testify as an expert on drug traffickers' use of firearms. James testified that "because of the inherent dangerousness in the drug world," drug traffickers "will oftentimes arm themselves with weapons, including firearms to protect themselves and their product and cash." He stated that drug traffickers often have large amounts of cash on hand and that they are frequently robbed. He stated that when they are robbed, they typically do not report the robbery to the police because "[i]t's an odd 911 call to say that you've been robbed of your drugs."

Irons called a single witness at trial, Matthew Alway. Alway testified that he had sold Irons the firearm because Alway was moving out of Washington and did not have a place to store it. Alway stated that he intended to buy back the gun at some point but that he never did. Alway testified that the sale did not "have anything at all to do with a drug transaction of any sort."

The jury convicted Irons on all charges and, by special verdict, expressly found that Irons conspired to distribute 400 grams or more of a substance containing fentanyl and that he possessed with intent to distribute 40 grams or more. Irons received concurrent sentences of 120 months on the two drug trafficking charges, which was the mandatory minimum sentence for the conspiracy offense. *See* 21 U.S.C. §§ 841(b)(1)(A)(vi), 846. He was sentenced to the additional mandatory consecutive term of 60 months on

the § 924(c) firearm charge.  *See* 18 U.S.C.
§ 924(c)(1)(A)(i), (D)(ii).  Irons timely appealed.

## II

Irons contends that the district court's instructions failed
adequately to explain the elements of the § 924(c) offense.
His chief complaint is that, while the statute required the jury
to find that Irons possessed a firearm "in *furtherance* of" a
drug trafficking crime, *see* 18 U.S.C. § 924(c)(1)(A)
(emphasis added), the court gave a supplemental instruction,
in response to a jury note, that allowed the jury to convict
merely by finding that Irons' possession of the gun had a
"connection" to the trafficking.  We agree with Irons that the
supplemental instruction was flawed and that reversal is
warranted.

## A

As a preliminary matter, we address the parties' vigorous
dispute over whether Irons sufficiently preserved below the
jury-instruction objections he now raises and whether, as a
result, we should review these objections only for plain
error.  *See* FED. R. CRIM. P. 52(b) ("A plain error that affects
substantial rights may be considered even though it was not
brought to the court's attention."); *United States v. Powell*,
955 F.2d 1206, 1210 (9th Cir. 1992) ("We review an
instruction for plain error when the defendant has not raised
a proper objection at trial.").  To properly evaluate this issue,
we set forth the relevant proceedings concerning the court's
jury instructions in some detail.

## 1

The relevant language of § 924(c) imposes criminal
punishment on any person "who, in furtherance of any such

crime"—*i.e.*, a "crime of violence or drug trafficking crime"—"possesses a firearm." 18 U.S.C. § 924(c)(1)(A). The Government's proposed instruction on the § 924(c) charge was based on the then-applicable Ninth Circuit pattern jury instruction, and it did not contain any definition of the phrase "in furtherance of." Irons initially proposed two alternative instructions defining that phrase. The first defined this element as follows:

> "In furtherance of" means furthering, advancing or helping forward.
>
> Evidence that a defendant merely possessed a firearm at a drug trafficking crime scene is insufficient. There must be proof that the defendant intended that the weapon promote or facilitate the underlying crimes of conspiracy to distribute fentanyl or possession with intent to distribute fentanyl.

Irons' second, alternative instruction retained only the first sentence and deleted the further explanation in the second paragraph.

After receiving Irons' proposed jury instructions, the Government argued that "in furtherance of" should not be defined but that, if the court disagreed, it should instruct the jury to determine "whether the firearm was possessed to advance or promote the drug trafficking offense based on the totality of the circumstances, including the strategic location of the firearms, and its proximity and accessibility to the drugs."

The district court subsequently circulated a proposed set of jury instructions to the parties and held a conference to

address any remaining objections.[1]   The court's proposed instructions included a definition of "in furtherance of," but it did not exactly track either side's proposals.   Instead, the court's wording happened to closely track the language of an instruction that we upheld in our unpublished decision in *United States v. Nichols*, 786 F. App'x 624 (9th Cir. 2019).[2] Specifically, the court proposed defining "in furtherance of" as follows:

> "In furtherance of" means there must be a connection between the firearm and the drug trafficking crime.   In determining whether a firearm was possessed in furtherance of a drug trafficking crime, you may consider the totality of the circumstances, including the proximity, accessibility, and strategic location of the firearm.

Irons did not object to defining "in furtherance of" to mean "a connection between the firearm and the drug trafficking crime."[3]   Instead, he objected only to the portion of the

---

[1] We grant Irons' motion to supplement the record with a copy of the court's proposed jury instructions that were discussed at that conference.

[2] As we explain below, subsequent events suggest that this congruence was not an accident, but at this initial conference on jury instructions, the district court did not yet identify *Nichols* as the source of this proposed language.

[3] Irons described the court's definition as "an addition that the government proposed."   That was not quite correct, because the Government's proposed instruction would have defined "in furtherance of" to mean "to advance or promote," whereas the court's instruction merely required a "connection."   Irons apparently overlooked this change in language.

instruction that "narrows the circumstances down to proximity, accessibility, [and] strategic location" and asked the court to strike everything from the word "'including,' to the end of that last sentence." Irons also noted that he had submitted a supplemental proposed jury instruction for the § 924(c) count—in addition to the two alternatives he had submitted earlier—and this third alternative omitted any definition of "in furtherance of." Irons stated that he "would object to the court not giving that one." After taking the objections under submission, the court issued final jury instructions that omitted any definition of the phrase "in furtherance of."

As it turned out, during deliberations the jury requested clarification of the word "furtherance" as used in the § 924(c) instruction. The Government argued that the court should instruct the jury with the language that the court had proposed initially. Irons, however, stated that "the court should not answer the question. Simply tell them that they have all of their instructions." The district court at this point raised the *Nichols* decision, stating that it was "squarely on point on the issue that's now before th[e] court." Noting that *Nichols* had upheld a particular definition of "in furtherance of," the district court stated that, "unless there's further argument, it's just a question of how much" of the *Nichols* instruction "will we incorporate into responding to the jury." Specifically, *Nichols* had upheld the following instruction of "in furtherance of" as used in § 924(c):

> In furtherance of means there must be a connection between the firearm and the defendant's possession of methamphetamine with intent to distribute. In determining whether a firearm was possessed in furtherance of possession of

methamphetamine with intent to distribute, you may consider the totality of the circumstances, including the proximity, accessibility, and strategic location of the firearm as part of the defendant's possession of a distribution amount of methamphetamine.

*Id*. at 629.[4] Irons responded that *Nichols* "is not a published case, that it is advisory, at best, and the established case law is that there are no additional definitions required." Accordingly, Irons stated that, to the extent that the court intended to give an instruction based on *Nichols*, "it would be under our objection."

The court rejected Irons' proposal that no response be given, and it then asked Irons, subject to that objection, "what language is appropriate to go back to the jury?" In response, Irons noted that he had previously objected to the similar list of factors (*i.e.*, proximity, accessibility, and strategic location) that had been included in "the court's first proposed instruction," and he similarly requested that that language be stricken from the court's current proposed instruction based on *Nichols*. However, Irons again apparently did not notice, and did not call the court's attention to, the fact that the court's current proposed instruction, like the prior one, merely required a "*connection* between the firearm" and the drug trafficking offense.

The district court declined to delete the list of factors, stating that it intended to give an instruction adopting some

---

[4] As noted earlier, this instruction closely tracked what the district court had originally proposed before the jury was initially instructed. *See supra* at 11.

form of the language from *Nichols* "without much variance." The court, however, gave Irons one last opportunity to propose modified language. Irons responded by asking only that the court use the phrase "including but not limited to," rather than just "including." The Government did not object to that request. The instruction was then read verbatim into the record, and Irons' only comment was to note that, when the instruction was typed up, the phrase "'in furtherance' should be in quotes." The court then summarized its understanding of the parties' positions by stating:

> The parties had the opportunity to review the exact language that came out of [*Nichols*], and counsel for the defendant still objected to the court giving any instruction to the jury, but upon further direction from the court that I was going to give a form of this opinion to the jury in response to the specific question, the following language will go back:

> "In furtherance of" means there must be a connection between the firearm and Count 1 [the conspiracy charge] or Count 3 [the possession-with-intent-to-distribute charge]. In determining whether a firearm was possessed in furtherance of Count 1 or Count 3, you may consider the totality of the circumstances, including but not limited to the proximity, accessibility, and strategic location of the firearm.

The court then asked, "Is that accurate?" Counsel for both sides responded "Yes, Your Honor." The court then sent its written instruction to the jury.

About an hour after receiving the instruction, the jury sent a note asking the court whether "possessing a gun with intent to protect illegally possessed drugs and money acquired through selling drugs qualify as having the gun 'in furtherance of.'" With the agreement of both sides, the court responded by directing the jury to reread their instructions. Nine minutes later, the jury returned a verdict finding Irons guilty on each count.

**2**

On appeal, Irons raises two primary objections to the district court's jury instructions on the § 924(c) count. The first can be readily rejected, leaving us to then to consider what standard of review applies to the second.

Irons' first contention is that the district court erred in failing to give one of the two instructions defining "in furtherance of" that Irons had *initially* proposed, before the jury retired to deliberate. He argues that his submission of these instructions, together with the authority supporting them, is sufficient to preserve his objections to the court's failure to give them. Those instructions, he argues, would have clarified for the jury that (1) "in furtherance of" means "furthering, advancing, or helping forward"; (2) Irons must have intended that his possession of the firearm promote or facilitate an underlying drug trafficking offense; and (3) mere possession, without more, is insufficient. Even assuming, without deciding, that we should review this contention de novo, we conclude that it fails. Under directly controlling precedent, the district court did not err in rejecting Irons' proposed instructions in favor of the simpler instruction it initially gave to the jury, which left the phrase "in furtherance of" undefined. *See United States v. Lopez*, 477 F.3d 1110, 1115 (9th Cir. 2007) ("The district court did not err, much less plainly err, by failing separately to define

'in furtherance' in its instruction to the jury on possession of a firearm in furtherance of a drug trafficking offense.").

Irons also contends that the court's supplemental instruction in response to the jury note was flawed because it allowed the jury to convict based on a mere "connection" between the firearm and the drug trafficking, which is a weaker showing than the phrase "in furtherance of" requires. We conclude that Irons failed to adequately preserve this objection below and that, as a result, our review is only for plain error.

Federal Rule of Criminal Procedure 30(d) states that a "party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate." We do not construe the rule's requirement to object "before the jury retires to deliberate" to mean that the requirement embodied in the rule has no application to a situation, such as here, in which the court or a party proposes to give a supplemental jury instruction in response to a note from a jury that is *already* deliberating. That requirement continues to apply and, *mutatis mutandis*, it requires a comparably specific objection to such a supplemental instruction before that instruction is given to the jury to use in its further deliberations. *See United States v. Dorri*, 15 F.3d 888, 891 (9th Cir. 1994) (stating that when a jury requests clarification of an instruction, "the requirement under [Rule] 30 still applies" and "counsel must state 'distinctly the matter to which that party objects and the grounds of the objection'").

Accordingly, in response to the jury's note and the suggestion that a supplemental instruction be given, it was incumbent on Irons to explain, with specificity, what he then wanted the court to do. The mere fact that Irons had

previously proposed instructions that happened to bear on the point raised in the jury's note is not sufficient to preserve the position that those instructions should *then* be given in response to the jury's note. As we have explained, Irons' prior instructions had been properly rejected before the jury began its deliberations, and so if Irons believed that the court should now revisit that issue in light of the jury's note, he needed to say so. He did not. Instead, Irons stood on his objection that no additional instruction should be given. Although we cannot say that the district court would have abused its discretion had it likewise adhered to that position, we find no abuse of discretion in the court's conclusion that, in light of the jury's note, *some* further instruction should be given. *United States v. Solomon*, 825 F.2d 1292, 1295 (9th Cir. 1987) (stating that the necessity for a supplemental instruction "in response to jury inquiries" is a matter that "lies within the discretion of the trial court").

Having properly so ruled, the court then appropriately proceeded to ask Irons to state what he thought that supplemental instruction should say. The court began with the language of the instruction that had been used in *Nichols*, and it asked the parties to suggest whatever changes they thought were appropriate. At that point, Irons first requested that the court eliminate the list of suggested factors that the jury should consider in determining whether the "in furtherance of" requirement had been met. He noted that he had made a similar request in response to the instruction that the court had initially proposed. After the court declined to delete the list, Irons then asked for only one further change— namely, that the list should be preceded by the phrase "including but not limited to" rather than just "including." The court accepted that change.

Under these circumstances, Irons failed to preserve the objection that the district court's supplemental instruction improperly allowed the jury to convict him of possession of a firearm "in furtherance of" a drug trafficking offense based on a mere "connection" between the firearm and that trafficking.   Our review is therefore only for plain error under Rule 52(b).  *See* FED. R. CRIM. P. 30(d) ("Failure to object in accordance with this rule precludes appellate review, except as permitted under Rule 52(b).").

## B

Federal Rule of Criminal Procedure 52(b) provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention."   "Rule 52(b) is permissive, not mandatory." *United States v. Olano*, 507 U.S. 725, 735 (1993).   "To establish eligibility for plain-error relief, a defendant must satisfy three threshold requirements.  *First*, there must be an error.  *Second*, the error must be plain.  *Third*, the error must affect 'substantial rights,' which generally means that there must be 'a reasonable probability that, but for the error, the outcome of the proceeding would have been different.'" *Greer v. United States*, 141 S. Ct. 2090, 2096 (2021) (citations omitted).   "If those three requirements are met, an appellate court may grant relief if it concludes that the error had a serious effect on 'the fairness, integrity or public reputation of judicial proceedings.'"  *Id*. at 2096–97 (citation omitted).   The Supreme Court has made clear that "the burden of establishing entitlement to relief for plain error is on the defendant claiming it."  *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004).

### 1

Addressing the first prong of this test, we conclude that the district court erred by instructing the jury that the "in furtherance of" requirement in 18 U.S.C. § 924(c)(1)(A) means that "there must be a connection between the firearm" and the alleged drug trafficking offense.

In ordinary usage, an action is in "furtherance" of something if it "facilitat[es] the progress of something" or "mak[es] it more likely to occur." *Furtherance*, BLACK'S LAW DICTIONARY (11th ed. 2019). The phrase thus denotes the idea of "promotion or advancement" of an objective. *Id*.; *see also Furtherance*, AMERICAN HERITAGE DICTIONARY (5th ed. 2018) ("[t]he act of furthering, advancing, or helping forward"); *Furtherance*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1981 ed.) ("a helping forward: ADVANCEMENT, PROMOTION"). In accordance with that ordinary meaning, we have expressly held that a "conviction for possession of a firearm 'in furtherance of' a drug trafficking offense or crime of violence under § 924(c) requires proof that the defendant possessed the weapon *to promote or facilitate* the underlying crime." *United States v. Krouse*, 370 F.3d 965, 967 (9th Cir. 2004) (emphasis added). "In other words, this element of § 924(c) turns on the intent of the defendant." *Id*.

While an action that promotes, facilitates, or advances an objective will thereby necessarily have a "connection" to that goal, the converse is not true: not everything that has a "connection" to something advances or facilitates its progress. *Cf. Krouse*, 370 F.3d at 966 (stating that "in furtherance of" requires a "*sufficient* nexus" between the gun and the predicate offense) (emphasis added). The phrase "in furtherance of" thus refers to a particular *type* of connection,

and that critical aspect of the phrase is not captured by an instruction that merely requires a "connection."

This understanding of "in furtherance of" is confirmed by examining § 924(c)'s structure and the manner in which Congress amended that statute in response to judicial construction of it. *See Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1892 (2019) (consulting "the statute's text, structure, and history" of amendments in construing its meaning).

At the time of the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137 (1995), the operative language of § 924(c) imposed criminal punishment on "[w]hoever, during and *in relation to* any crime of violence or drug trafficking crime . . . uses or carries a firearm."  18 U.S.C. § 924(c) (1994) (emphasis added).  Two years earlier, the Court had already held that the "phrase 'in relation to' is expansive," but that it "at least" means that the firearm "must facilitate or have the *potential* of facilitating the drug trafficking offense."  *Smith v. United States*, 508 U.S. 223, 237–38 (1993) (simplified) (emphasis added).  In *Bailey*, the Court resolved a circuit split over the meaning of the term "uses" in § 924(c) and held that it requires "more than *mere possession* of a firearm by a person who commits a drug offense."  516 U.S. at 143 (emphasis added).  As the Court explained, "[h]ad Congress intended possession alone to trigger liability under § 924(c)(1), it easily could have so provided" by using "the term 'possess,'" which was "frequent[ly] use[d]" in *other* "gun-crime statutes to describe prohibited gun-related conduct."  *Id*.

In "direct response to th[e] Court's decision in *Bailey*," Congress amended § 924(c) in 1998 to "add[] the word 'possesses' to the principal paragraph" of a restructured § 924(c).  *United States v. O'Brien*, 560 U.S. 218, 232–33

(2010).  The statute now provides, in relevant part, that "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall" be punished as provided.  18 U.S.C. § 924(c)(1)(A). Notably, Congress did *not* simply add the word "possesses" to the then-existing main clause of the statute, so that it would punish whoever, "during and in relation to any crime of violence or drug trafficking crime . . . *possesses*, uses, or carries a firearm."  *See id*.  That would have been the simplest way to abrogate *Bailey*, and that phrasing would have required only that the possession be "in relation to" the predicate crime, *i.e.*, that it have a sufficient connection to that crime.  Instead, Congress added a new separate clause that covered possession, and it used a different phrase to describe the requisite link between possession of the firearm and the predicate offense—namely, that the possession must be "in furtherance of" the predicate offence.  When, as here, Congress uses distinct language in one section of a statute that is omitted "in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (citation omitted). That reinforces what the text already makes clear, which is that "in furtherance of" has a different—and narrower— meaning than "in relation to."

By stating that possession of a firearm was "in furtherance of" drug trafficking if there was "a connection between the firearm" and a predicate drug trafficking offense, the district court's supplemental instruction in this case improperly permitted the jury to convict Irons without finding that he possessed the firearm with the intent that it further or advance a drug trafficking crime.

**2**

Turning to the second element of the plain-error test, we would be hard-pressed to say that the district court's error on this score was "plain" at the time it ruled, because the court relied on an unpublished memorandum decision of this court that directly supported its position. *See Nichols*, 786 F. App'x at 629–30. Indeed, the position we adopt today more closely resembles that of the concurring judge in *Nichols*. *See id*. at 631 (Berzon, J., concurring) (asserting that the "plain language" of the statute required "more than just an amorphous 'connection' between the firearm and the drug trafficking crime—a purpose to facilitate, promote, or advance the commission of a drug trafficking crime was needed").

But the Supreme Court has made clear that whether an error is "plain" for purposes of Rule 52(b) is judged "at the time of review" by the appellate court and *not* at the "time of error." *Henderson v. United States*, 568 U.S. 266, 273 (2013). The question, then, is whether the district court's instruction, "even if now wrong (in light of the new appellate holding)," should now be characterized as "questionabl[y]" wrong rather than "*plainly* wrong." *Id*. at 278. As we understand *Henderson*, it requires us assess, *with the benefit of hindsight*, whether our analysis reveals the question at issue to have a "plain" answer or whether that analysis confirms that we have instead answered a close and difficult question. With the advantage of that hindsight, we conclude that our textual analysis is sufficiently one-sided, and sufficiently dictates the answer, that the district court's error is "plain." To be sure, it seems quite unfair to conclude that the district court "plainly erred" when it followed an unpublished decision of this court, but the Court has made "clear that plain-error review is not a grading system for trial

judges." *Id*. "It has broader purposes, including in part allowing courts of appeals better to identify those instances in which the application of a new rule of law to cases on appeal will meet the demands of fairness and judicial integrity." *Id*.

**3**

To satisfy the third element of the plain-error test, Irons must show that the error affected his "substantial rights." *See* FED. R. CRIM. P. 52(b). In the context of this case, that requires Irons to show that, if the district court had provided a correct jury instruction, "there is a reasonable probability that a jury would have acquitted him." *Greer*, 141 S. Ct. at 2098. A probability is "reasonable" in this sense if it is "'sufficient to undermine confidence in the outcome' of the proceeding." *Dominguez Benitez*, 542 U.S. at 83 (citation omitted). "The reasonable-probability standard is not the same as, and should not be confused with, a requirement that a defendant prove by a *preponderance of the evidence* that but for error things would have been different." *Id*. at 83 n.9 (emphasis added). In determining whether such a reasonable probability has been shown, we "may consider the *entire* record—not just the record from the *particular proceeding* where the error occurred." *Greer*, 141 S. Ct. at 2098. Applying these standards, we conclude that Irons has made the requisite showing.

On this record, the error in the instruction effectively removed from the jury's consideration the only disputed issue concerning the § 924(c) charge. As noted earlier, a firearm has a connection to a drug trafficking offense if it has the objective "potential of facilitating the drug trafficking offense." *Smith*, 508 U.S. at 238 (simplified) (making this observation concerning the distinct "in relation to" clause of § 924(c)); *see supra* at 19–20. The district

court's supplemental instruction clearly framed the "connection" inquiry in objective terms, because it mentioned only a series of objective factors for the jury to consider in determining whether that connection had been established—namely, "proximity, accessibility, and strategic location." But the issue of an *objective* connection was not seriously disputed at Irons' trial. The essential facts about the condition of the gun and its location in Irons' bedroom were undisputed, and Irons similarly did not seriously contest that he engaged in drug trafficking in that bedroom and its adjacent bathroom over an extended period of time. On the undisputed facts at trial, the gun thus plainly had an objective "connection" to Irons' drug trafficking in the ordinary sense of that term.

What was sharply disputed at trial was Irons' *intent* in having the gun under the mattress while living in his home. Irons presented a witness who, if believed, supported the conclusion that Irons had agreed to buy the gun from him for subjective reasons that had nothing to do with drug trafficking. *See supra* at 8. Irons further argues that West's testimony that Irons mentioned bringing a gun to Disneyland for protection further supports a reasonable doubt as to whether Irons possessed the gun merely for protection generally and not to facilitate his drug trafficking. *Cf. United States v. Potter*, 630 F.3d 1260, 1261 (9th Cir. 2011) (stating that a firearm is possessed "in furtherance of" drug trafficking if *one* of the defendant's purposes is to facilitate drug trafficking, even if an additional purpose is to protect the home generally). But under the instructions as given, the jury did not need to make any finding as to this disputed issue of Irons' subjective intent; an objective connection was enough. Viewed that way, the supplemental instruction

elided the parties' dispute over subjective intent and all but directed a verdict on the "in furtherance of" issue.[5]

Recognizing that Irons does not have to show that it is more likely than not that a jury would have acquitted him, we conclude that, on this record, the issue of Irons' subjective intent was sufficiently triable that its de facto removal from the jury's consideration undermines confidence in the outcome. *Dominguez Benitez*, 542 U.S. at 83 & n.9. That is, there is a reasonable possibility that a properly instructed jury would have had a reasonable doubt as to the issue of subjective intent. Irons has carried his burden to show that the error affected his substantial rights. *See Greer*, 141 S. Ct. at 2098.

## 4

The last remaining element is whether we should exercise our discretion to grant relief, which turns on whether "the error had a serious effect on 'the fairness, integrity or public reputation of judicial proceedings." *Greer*, 141 S. Ct. at 2096–97 (citation omitted). We conclude that, under that standard, reversal is warranted.

Removing the key disputed issue at trial from the jury's consideration certainly casts doubt on the fairness of the proceedings, even if Irons' own counsel failed to catch the error. Indeed, counsel's failure to detect this plain error in the supplemental instruction arguably implicates Irons' right

---

[5] The dissent is therefore wrong in contending that, if the jury had agreed with Irons' arguments concerning his subjective intent, "it would have acquitted [him] even under the erroneous supplemental instruction the district court gave." *See* Dissent at 34. Under the supplemental instruction, all the jury had to find to convict was an *objective* connection between the firearm and the drug trafficking.

to effective assistance of counsel, which is a consideration that bears upon the integrity and public reputation of the proceedings. However, there are important countervailing considerations that must also be considered. In particular, "[w]e have recognized that where it is extremely unlikely that, if properly instructed, the jury would not have convicted the defendant, then the greater threat to the integrity and fairness of judicial proceedings would arise from the reversal of a conviction on flawed jury instructions rather than from affirming an imperfect verdict." *United States v. Turchin*, 21 F.4th 1192, 1202 (9th Cir. 2022) (citations and internal quotation marks omitted). We agree that the evidence of an objective connection between the firearm and Irons' drug trafficking was strong. But the defect here relates to the issue of Irons' subjective intent. Although we might have found the Government's reading of the evidence more persuasive if we were the trier of fact, we conclude that the evidence is "not so overwhelming that reversal here would impugn the integrity or fairness of the proceedings." *Id*. at 1203.[6]

Accordingly, we reverse Irons' conviction under § 924(c) and remand for a new trial on that charge.

---

[6] Nor are we persuaded by the Government's suggestion that the jury's second note indicated that it had found that Irons "possess[ed] a gun with intent to protect illegally possessed drugs and money acquired through selling drugs." *See supra* at 15. The fact that the jury asked a hypothetical about such a factual scenario does not necessarily mean that it had unanimously concluded that this case fell within that hypothetical scenario. Although the note may suggest that many jurors held that view, its import is ultimately too speculative to weigh heavily in the balance here.

## III

Irons raises two other arguments concerning his § 924(c) conviction, which we need only briefly address.

## A

First, Irons challenges the sufficiency of the evidence against him on the § 924(c) charge. Although we have reversed that conviction, "we must address the sufficiency of the evidence supporting it, for if the evidence were insufficient, retrial is barred by the Double Jeopardy Clause." *United States v. Lewis*, 787 F.2d 1318, 1323 (9th Cir. 1986). For purposes of resolving this issue, we consider all the evidence admitted at trial, regardless of whether Irons challenges its admissibility. *Lockhart v. Nelson*, 488 U.S. 33, 40–41 (1988). We have little difficulty concluding that a reasonable jury could find beyond a reasonable doubt that Irons possessed the firearm in furtherance of his drug trafficking. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (holding that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt").

Viewing the evidence in the light most favorable to the Government, a reasonable jury could reject Alway's testimony as not credible or persuasive and could draw a circumstantial inference of intent arising from the objective connection between the location and condition of the firearm and the drug trafficking. That is enough to meet the lenient standard for evidentiary sufficiency under *Jackson*. *See, e.g.*, *United States v. Norwood*, 603 F.3d 1063, 1072 (9th Cir. 2010) (finding sufficient evidence to uphold a conviction under § 924(c)(1) when a firearm was found under a mattress a few feet away from drugs); *United States*

*v. Hector*, 474 F.3d 1150, 1158–59 (9th Cir. 2007) (finding sufficient evidence to uphold a conviction under § 924(c) when a firearm was underneath a futon near an entryway where drugs were sold).

## B

Second, Irons contends that the district court improperly admitted Detective James' expert testimony concerning certain general practices of drug traffickers without assessing the reliability of the opinions that he would express. In particular, the district court allowed Detective James to testify that "[d]rug traffickers will oftentimes arm themselves with weapons, including firearms to protect themselves and their product and cash." Irons objected to the admission of Detective James' testimony and requested an admissibility hearing pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). The court overruled Irons' objection, declined to conduct a *Daubert* hearing, and admitted Detective James' testimony.

Although we have held that the sort of matters addressed by Detective James may properly be the subject of expert testimony in appropriate cases, *see, e.g.*, *United States v. Anchrum*, 590 F.3d 795, 804 (9th Cir. 2009), we have also held that a district court "necessarily abuses its discretion[] when it makes no reliability findings," which are required to satisfy its "gatekeeping duty" for determining the admissibility of expert testimony under Federal Rule of Evidence 702. *See United States v. Valencia-Lopez*, 971 F.3d 891, 898–99 & n.6 (9th Cir. 2020) (citation omitted). We have further stated that "[a]n implicit reliability finding is not sufficient" and that "the court must make an explicit reliability finding." *Id*. at 899 n.6 (citations and internal quotation marks omitted). The Government acknowledges these holdings, but it argues that "this type of

error is harmless if the record provides a basis for determining the expert's reliability" and that "[s]uch is the case here." In view of our reversal, we need not decide whether any such error was harmless. On remand, the district court must make the reliability findings required by *Valencia-Lopez* before admitting any such expert testimony.

**IV**

Irons' opening brief challenges his two predicate drug trafficking convictions on the ground that the district court erred in instructing the jury that, in determining the amount of drugs involved in the conspiracy charge and the possession-with-intent-to-distribute charge, the "government does not have to prove that the defendant knew the quantity of the controlled substance." In his reply brief, however, Irons concedes that our recent decision in *United States v. Collazo*, 984 F.3d 1308 (9th Cir. 2021) (en banc), forecloses his argument as to the possession charge. There, we held that in order to obtain an enhanced quantity-based sentence under 21 U.S.C. § 841(b) for an offense in violation of § 841(a) (which prohibits, *inter alia*, possession of unlawful drugs with intent to distribute), "the government must prove beyond a reasonable doubt the specific type and the quantity of substance involved in the offense, but *not* the defendant's knowledge of (or intent) with respect to that type and quantity." *Id*. at 1329 (emphasis added).

Although Irons argues that *Collazo*'s holding was "less clear" as to a drug conspiracy charge under 21 U.S.C. § 846, that is wrong. *Collazo* squarely held that, "[f]or a conspiracy offense under § 846, the government need not prove a level of criminal intent greater than that for the underlying offense." 984 F.3d at 1320 n.10. And because "the government need not prove that a defendant knew (or had an intent) with respect to a specific drug type and quantity in

order to secure a conviction under § 841(a) and penalties under § 841(b)(1)," it follows that "the government likewise need not prove such knowledge or intent for purposes of § 846." *Id*.

Lastly, Irons argues that the district court plainly erred by instructing the jury that "a defendant who is a member of a conspiracy to distribute controlled substances, including fentanyl, is responsible for . . . the amount of fentanyl distributed or intended to be distributed by coconspirators, if the defendant could reasonably foresee that amount to be a necessary or natural consequence of the unlawful agreement." We disagree. In *Collazo*, we held that the enhanced quantity-based penalties in § 841(b) apply if "the government has proven beyond a reasonable doubt that the underlying § 841(a)(1) offense"—*i.e.*, the offense that was the object of the conspiracy—"involved the drug type and quantity set forth in § 841(b)(1)(A)–(B)." 984 F.3d at 1336. It was therefore error, we held, to instruct the jury that it should rely on the quantity of drugs that "was reasonably foreseeable to [the defendant] or fell within the scope of his particular agreement." *Id*. Here, by contrast, the above-quoted wording of the instructions limited the quantity of drugs for purposes of the § 841(b)'s enhanced penalties to "the amount of fentanyl distributed or intended to be distributed by coconspirators." By thus defining the relevant quantity, the instructions properly limited that quantity to what was "involved" in the "underlying § 841(a)(1) offense" that was the object of the conspiracy. *See Collazo*, 984 F.3d at 1336. The fact that the instructions went further—requiring the jury to find *both* that the quantity alleged in the indictment was "the amount of fentanyl distributed or intended to be distributed by coconspirators" *and* that that amount was the reasonably foreseeable "necessary or natural consequence of the unlawful agreement"—provides no

grounds for reversal.  At worst, the instruction required the Government to prove more than *Collazo* required, but not less.  Consequently, there was no plain error on this score.

\*          \*          \*

Accordingly, we **AFFIRM** Irons' drug trafficking convictions (Counts 1 and 3).  We **REVERSE** his conviction under § 924(c) and **REMAND** for a new trial on that charge.

WATFORD, Circuit Judge, dissenting in part:

I would affirm the judgment in full.  Given the limitations imposed by plain error review, I think Rhett Irons's conviction for possessing a firearm in furtherance of a drug-trafficking crime should stand.

I agree with my colleagues that our court erred in *United States v. Nichols*, 786 F. App'x 624 (9th Cir. 2019), by approving a supplemental instruction that defined the phrase "in furtherance of" to require only "a connection" between the defendant's firearm possession and the underlying drug-trafficking crime.  I joined the unpublished disposition in *Nichols*, but in retrospect I regret having done so.  As Judge Berzon's concurrence in that case persuasively explains, *see id.* at 631–32, our circuit has long held that the "in furtherance of" element of 18 U.S.C. § 924(c) requires more than a mere "connection" between firearm possession and commission of a drug-trafficking crime.  As we held in *United States v. Krouse*, 370 F.3d 965 (9th Cir. 2004), "[a] conviction for possession of a firearm 'in furtherance of' a drug trafficking offense or crime of violence under § 924(c) requires proof that the defendant possessed the weapon *to promote or facilitate the underlying crime*."  *Id.* at 967

(emphasis added). We have consistently adhered to that view in cases decided since *Krouse*. *See, e.g.*, *United States v. Rios*, 449 F.3d 1009, 1012 (9th Cir. 2006) ("[T]he government must show that the defendant intended to use the firearm to promote or facilitate the drug crime."); *United States v. Lopez*, 477 F.3d 1110, 1115 (9th Cir. 2007) (same); *United States v. Mahan*, 586 F.3d 1185, 1187 (9th Cir. 2009) (same).

Our court plainly erred in *Nichols* when we endorsed an instruction stating that "in furtherance of" means "there must be a connection between the firearm and the defendant's [drug-trafficking crime]." 786 F. App'x at 629–30. The district court in this case cannot be faulted for following the erroneous guidance we provided in *Nichols*, but *Nichols* itself departed from well-settled circuit precedent. As a result, when the district court gave the same supplemental instruction we approved in *Nichols*, it committed an error, and that error was both clear and obvious. Irons has thus satisfied the first two prongs of plain error review. *See United States v. Olano*, 507 U.S. 725, 733–34 (1993).

I would nevertheless affirm Irons's § 924(c) conviction because, in my view, he cannot show that the error affected his substantial rights, as required by the third prong of plain error review. Under the third prong, Irons must show "a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different." *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

The government's evidence as to the "in furtherance of" element may not have been overwhelming, but it was quite strong. Irons kept a loaded Glock firearm within easy reach under the mattress in his bedroom, and he conducted most of his drug sales in that bedroom or the adjoining bathroom, the

entrance to which was just a few feet from his bed. When agents searched Irons's home, they found fentanyl pills, oxycodone pills, and cocaine in the bedroom and adjoining bathroom. They also found $3,110 in cash on Irons and recovered roughly $53,000 in cash from three locations within the home, two of which were a safe in the bedroom closet and a drawer in the adjoining bathroom. The testimony at trial established that Irons conducted a substantial drug-trafficking operation out of his bedroom and adjoining bathroom, which involved large quantities of fentanyl pills and large sums of cash. One of Irons's co-conspirators testified that in the nine-month period preceding Irons's arrest, he purchased more than 13,000 fentanyl pills from Irons worth nearly $470,000. Irons sold significant quantities of fentanyl pills to other co-conspirators as well.

Based on this evidence, the government argued that Irons possessed the Glock at least in part for the purpose of protecting his sizeable stash of drugs and cash. Irons does not dispute that possessing a firearm for that purpose would promote or facilitate the drug-trafficking crimes in which he was engaged.

Instructing the jury that it could convict upon finding "a connection" between Irons's possession of the Glock and his drug-trafficking crimes concededly did not convey the full extent of the government's burden. The instruction was accurate in the sense that the government must indeed prove a connection between the two, but of course not just any connection will suffice in this context. The government must prove a specific type of connection—namely, that possession of the firearm promoted or facilitated the underlying drug-trafficking crime.

The problem for Irons is this:  There simply was no other type of "connection" that the jury could have found between Irons's possession of the Glock and his drug-trafficking crimes.  The only connection the government argued to the jury—that Irons possessed the Glock to protect his drugs and cash—*did* involve promotion or facilitation of his drug-trafficking crimes.  Irons's defense at trial was that he used the Glock solely for general personal protection, for such things as long road trips to Disneyland that were unrelated to drug trafficking.  In other words, he argued that there was *no connection at all* between his possession of the Glock and his drug-trafficking operation.  If the jury had accepted that argument, however, it would have acquitted Irons even under the erroneous supplemental instruction the district court gave.

Had we been reviewing the instructional error at issue here under the harmless error standard, which requires the government to prove that the error was harmless beyond a reasonable doubt, I might have been inclined to agree with my colleagues that reversal of Irons's § 924(c) conviction was warranted.  But under the plain error standard we must apply instead, Irons had the burden to show a reasonable probability that, but for the instructional error, the jury would have reached a different result.  *See Dominguez Benitez*, 542 U.S. at 81–82.  On the record before us, I see no such reasonable probability, nor anything that would undermine confidence in the outcome of the trial.