**NOT FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-631 |
| Plaintiff-Appellee, | D.C. No. 2:21-cr-00724-JJT-1 |
| v. | |
| RYAN C. PATTERSON, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Arizona
John Joseph Tuchi, District Judge, Presiding

Argued and Submitted September 13, 2024
Phoenix, Arizona

Before: RAWLINSON and COLLINS, Circuit Judges, and FITZWATER,[**] District
Judge.
Dissent by Judge COLLINS.

Defendant-Appellant Ryan C. Patterson ("Patterson") was convicted following

a jury trial of three counts of tax evasion, in violation of 26 U.S.C. § 7201. He

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Sidney A. Fitzwater, United States District Judge for the
Northern District of Texas, sitting by designation.

challenges several evidentiary rulings, the denial of his motion for judgment of acquittal, and several sentencing decisions. We have jurisdiction under 28 U.S.C. § 1291, and we affirm. Because the parties are familiar with the facts of this case, we do not recount them here except as necessary to provide context for our decisions.

1. The district court did not err in overruling Patterson's objections to, and his motion to strike, the testimony of IRS revenue agent Debra Steele ("Steele"). Steele's testimony about her bank deposits analysis ("BDA") was not inadmissible hearsay, irrelevant, or unfairly prejudicial, and it did not violate Patterson's Sixth Amendment right of confrontation. Even if we assume without deciding that the district court plainly erred in failing to exclude Steele's testimony regarding Patterson's tax returns as improper expert testimony or lay opinion testimony, that error did not affect Patterson's substantial rights, so he is not entitled to relief. *See United States v. Gomez-Norena*, 908 F.2d 497, 500 (9th Cir. 1990) (holding that unpreserved evidentiary objections are reviewed for plain error); *see also United States v. Olano*, 507 U.S. 725, 734 (1993) (holding there is no plain error where substantial rights are not affected).

2. The district court did not abuse its discretion in allowing the government to

use Exhibits 395 and 397 as demonstrative aids[1] after they had been withdrawn from evidence. *See Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 773 n. 9 (9th Cir. 1981) (citation omitted) ("The admissibility of demonstrative evidence in particular is largely within the discretion of the trial judge."). Although the district court did not explicitly cite Rule 403 or recite the elements of Rule 403's balancing test when considering this issue, its explanation indicates that it conducted a proper Rule 403 analysis to determine whether the exhibits should have been allowed as demonstrative aids.

3. The district court did not err in admitting Exhibits 81, 440, and 413. Exhibits 81 and 440 were admitted pursuant to the parties' stipulation, which obviated the need for foundational testimony by a witness with personal knowledge. And to the extent that Patterson raises a relevance challenge to Exhibits 81 and 440, the district court's decision to admit them was reasonably supported by the record. The district court did not err in admitting Exhibit 413 based on lack of personal knowledge because Steele testified that she created the exhibit.

4. The government produced sufficient evidence to allow a reasonable juror to

---

[1]Under new Federal Rule of Evidence 107, which took effect December 1, 2024, a "demonstrative aid" is now called an "illustrative aid," the use of which is governed by Rule 107. We use the term "demonstrative aid" and follow the law in effect at the time of trial, while recognizing that new Rule 107(a) and Rule 403 adopt substantially similar standards.

convict Patterson under 26 U.S.C. § 7201. The government produced evidence that a BDA was performed, consisting of (1) a spreadsheet listing all deposits made into 24 bank accounts for Patterson and the companies he owned during the relevant tax years; (2) Steele's testimony about the steps she took to analyze the deposits; and (3) summary charts reflecting the conclusions of Steele's analysis. The absence of documentary proof of the intermediate steps that Steele completed does not mean that no analysis occurred or that no BDA exists. *See United States v. Boulware*, 384 F.3d 794, 811 (9th Cir. 2004) (explaining that BDA performer's testimony detailing procedure and methodology can constitute sufficient evidence that government conducted "adequate and full investigation" of defendant's accounts). And Steele's failure to calculate Patterson's "cash on hand" did not render the BDA insufficient because the government's evidence, if credited by the jury, allowed a rational juror to find that the government adequately accounted for "cash on hand" by demonstrating that it was immaterial. Ultimately, for purposes of determining whether the evidence was sufficient to convict Patterson, the precise amount of the taxes that Patterson evaded is inconsequential; it is enough that the government produced sufficient evidence for a rational juror to find that Patterson evaded some quantum of tax. *See United States v. Marashi*, 913 F.2d 724, 735 (9th Cir. 1990) (quoting 26 U.S.C. § 7201) ("The language of § 7201 does not contain a substantiality

- 4 -

requirement. It simply states that willful attempts to evade 'any tax' under the Tax Code is a felony.").

5. The district court did not err at sentencing in applying a "sophisticated means" enhancement under U.S.S.G. §§ 2T1.1 and 2T1.4. Steele testified that the government had to undertake the laborious exercise of subpoenaing 24 bank accounts and analyzing the thousands of deposit records associated with them to perform the BDA, which indicates that Patterson used sophisticated means to carry out his offenses. *See United States v. Jennings*, 711 F.3d 1144, 1147 (9th Cir. 2013). And the government's evidence of methods that Patterson used to conceal income—asking customers to make checks out to him personally, failing to record some of his business income, providing incomplete financial records to his tax preparers, and instructing Patterson's companies' secretary/bookkeeper to get rid of financial records—supported application of the enhancement, even if the district court did not explicitly refer to that evidence.

6. The district court did not clearly err in its factual findings when determining the amount of tax loss. The district court's findings were not "illogical, implausible, or without support in the record." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (citation omitted).

**AFFIRMED**.

FILED

COLLINS, Circuit Judge, dissenting:

DEC 31 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

Defendant-Appellant Ryan Patterson was charged in a three-count indictment with having willfully evaded his income taxes by signing and submitting false tax returns for 2014, 2015, and 2016. *See* 26 U.S.C. § 7201. He was convicted after a jury trial and sentenced to 20 months in prison. Because I conclude that his convictions were the result of prejudicial evidentiary error, I would reverse and remand for a new trial. I therefore respectfully dissent from the majority's judgment affirming Patterson's convictions and sentence.

At trial, the Government relied on "a bank-deposits method of proof" to establish that Patterson had substantially underreported his income on the relevant tax returns. *United States v. Boulware*, 384 F.3d 794, 811 (9th Cir. 2004). We have described the requirements of that method of proof as follows:

> When using the bank-deposits method of proof, the government must conduct an adequate and full investigation to remove non-income deposits, such as transfers between bank accounts. "The critical question is whether the government's investigation has provided sufficient evidence to support an inference that an unexplained excess in bank deposits is attributable to taxable income." Although the government must be especially thorough in its investigation and presentation, "it is well settled that the government is not obliged to prove the exact amount of a deficiency so long as the taxpayer's understatement of income is substantial."

*Id*. (citations omitted). Although the Government here was arguably "thorough in

its investigation" concerning "non-income deposits," it was far from "thorough in its . . . presentation" on that score at trial. *Id*. In my view, the key evidence on which the Government's bank-deposit analysis was based did not satisfy the requirements of the Federal Rules of Evidence, and Patterson's motion to strike that evidence should have been granted in full.

At trial, the Government presented the testimony of IRS Agent Debra Steele, who explained the general method she applied in performing her bank-deposit analysis. After the voluminous bank records had been scanned into an Excel spreadsheet, Steele separated the bank deposits that she thought were not income from those that she thought were income by moving the non-income items to the bottom of the spreadsheet. She then totaled up the remaining income deposits at the top of the spreadsheet, and she wrote down the resulting number, which she considered to be the "gross receipts," on a "sticky note." She then deducted the full expenses claimed by Patterson in order to determine what she believed to be Patterson's net profit or loss. She then created two charts, one comparing the gross receipts listed on each of Patterson's returns with the total gross receipts she calculated for each year, and the other comparing the net profit or loss shown on the returns with her calculations of net profit. Steele admitted, however, that she did not save the Excel spreadsheet that showed how she divided the various line entries of bank deposits into those that she believed were income deposits and

2

those that she believed were non-income deposits. Steele only had her bottom-line gross-receipt and net-profit numbers for each of the three years, and those numbers were listed on her two charts (which were initially admitted into evidence) and were orally read by her into the record.

Patterson moved to strike Steele's testimony and the two exhibits, relying principally on Rules 1006 and 403. The district court granted the motion as to the two charts, but not as to Steele's testimony. The court held that the charts were not admissible as summaries of voluminous evidence under Rule 1006 because, given that Steele did not save any of her work, there was no record as to *which* of the voluminous bank-record entries were being summarized. But the court held that Steele's oral testimony was "[u]ngoverned by Rule 1006" and that the same analysis therefore did not apply to that testimony. The court thus allowed Steele's testimony to stand, but it withdrew the two charts from evidence and instead classified them as permissible non-evidence demonstratives.

I agree with the district court's ruling that the summary charts did not comply with Rule 1006. That rule states that the proponent of a "summary, chart, or calculation" concerning the "content of voluminous writings" "must make the originals or duplicates" of the underlying materials available to the "other parties at a reasonable time and place." FED. R. EVID. 1006 (2023). The district court correctly held that this requirement is not satisfied if the proponent does not

3

identify *what portions* of the content of *which* documents are being summarized. *Cf.* FED. R. EVID. 1006, advis. comm. note (2004 amend.) (reaffirming that the purpose of the production requirement is to "ensure that all parties have a fair opportunity to evaluate the summary").

Moreover, the proponent has not adequately laid a foundation for the summary, chart, or calculation unless the proponent can show the work, so to speak, that underlies it. "Rule 1006 evidence by its very nature embodies an opinion that it accurately interprets or summarizes the contents of the voluminous source material," and where that evidence is presented "in the form of a lay opinion, as it usually will be, Federal Rule of Evidence 701 applies and the proponent must show that the opinion is rationally based on the perception of the witness and helpful to the trier of fact." 31 CHARLES ALAN WRIGHT AND VICTOR J. GOLD, FEDERAL PRACTICE AND PROCEDURE § 8043, at p. 535 (2d ed. 2021) (hereinafter "WRIGHT AND GOLD"). In my view, the underlying opinions behind the summaries and calculations in Steele's charts have not been shown to be "rationally based on the perception of the witness and helpful to the trier of fact," given that—as the district court recognized here—"she didn't keep a record precisely of which ones she included and which ones she disregarded, [and] more importantly, the jury doesn't know which ones." To support the opinions underlying these calculations, Steele had to provide sufficient intermediate detail to

4

the jury about how her methods were actually applied to this enormous mass of data (*e.g.*, perhaps by tallying up the various subcategories of income items and non-income items and defining more clearly the criteria for classifying a given entry as falling into a particular subcategory). Additionally, Steele should have supplied all of the supporting detail on which she relied to Patterson, and the failure to do so here denied him "effective cross-examination." *Square Liner 360, Inc. v. Chisum*, 691 F.2d 362, 376 (8th Cir. 1982). Effectively, what the Government did at Patterson's trial was to ask the jury to accept, based on Steele's barebones say-so, that *she* had determined that Patterson underreported his income. The rules of evidence require more than this sort of take-my-word-for-it approach.

Although the district court thus correctly withdrew the charts from evidence, the court erred in holding that the same analysis did not apply to Steele's oral testimony. Nothing in the text of Rule 1006 limits its applicability to physical exhibits, and Steele's oral recitation of her bottom-line calculations was "a summary . . . or calculation to prove the content of voluminous writings" within the plain language of the rule. Indeed, we have squarely held that "a summary, either oral or written, may be received in evidence," but "the summary must meet the requirements of Rule 1006." *United States v. Aubrey*, 800 F.3d 1115, 1130 (9th Cir. 2015) (citation omitted); *see also Square Liner 360, Inc.*, 691 F.2d at 376 ("We are satisfied that protection of the integrity of Rule 1006 requires its application to

5

Chisholm's oral testimony from his summaries and calculations." (citing *United States v. Johnson*, 594 F.2d 1253 (9th Cir. 1979)); *Johnson*, 594 F.2d at 1257 (applying Rule 1006 in holding "that the district court improperly allowed the Government to *ask* Mr. Harbert about the summary" (emphasis added)); *see also* 31 WRIGHT AND GOLD, *supra*, § 8044, at pp. 545–46 ("While a chart is necessarily in tangible form, summaries and calculations may be in tangible form or may be presented as testimony" (footnotes omitted)).  Indeed, the distinction drawn by the district court makes no sense, because it would allow the proponent of a summary to evade the strictures of Rule 1006 through the simple expedient of having the witness orally recite the summaries and calculations.

Because the district court erred in admitting the testimony of Steele as to her calculations, the convictions should be reversed.  On this record, it is likely that Steele's critical testimony, which occupied more than a day of the trial, was relied upon by the jury in concluding that Patterson had underreported his income.  The error therefore cannot be deemed to be harmless.  *See United States v. Mirabal*, 98 F.4th 981, 987 (9th Cir. 2024) ("We may only conclude that an error was harmless if it is 'more probable than not that the erroneous admission of the evidence did not affect the jury's verdict.'") (citations omitted)).

Because I would reverse Patterson's convictions on this ground, I need not reach any other issue raised on appeal except for Patterson's challenge to the

sufficiency of the evidence. *See United States v. Irons*, 31 F.4th 702, 715 (9th Cir. 2022). However, in evaluating the sufficiency of the evidence, we must consider all of the evidence before the jury, including evidence that was improperly admitted. *See id*. (citing *Lockhart v. Nelson*, 488 U.S. 33, 40–41 (1988)). Even though I think that Steele's testimony lacked an adequate foundation and lacked sufficient explanatory detail to be helpful to the jury, it was still *some* evidence of underreporting of income. And, importantly, it was not the *only* evidence of underreporting. The bookkeeper for Patterson's businesses testified that some business payments were made by personal check to Patterson and were omitted from the software records provided to Patterson's tax preparers and that some payments were made in cash and were "under the table" payments. This is enough evidence to permit a rational jury to find Patterson guilty under "the lenient standard for evidentiary sufficiency." *See id*. at 716 (stating that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (citation omitted)).

For the foregoing reasons, I dissent from the affirmance of Patterson's convictions and sentence. I would reverse and remand for a new trial.